PUSEY & JONES v. PENNSYLVANIA PAPER MILLS. (1.)

(Circuit Court, M. D. Pennsylvania. October 1, 1909.)

No. 19, May Term, 1906.

1. RECEIVERS (§ 194*)—ACCOUNTING AND COMPENSATION—COUNSEL FEES.
   The accounts of a receiver and the manner of keeping them considered and approved, and allowances made for his services and counsel fees.
   [Ed. Note.—For other cases, see Receivers, Dec. Dig. § 194.*]

2. RECEIVERS (§ 92*)—MANAGEMENT OF PROPERTY—CONDUCT OF BUSINESS.
   A receiver is not chargeable with a loss resulting from his conduct of a business, where it was done under directions of the court at the instance of parties in interest, and the loss was not due to any fault of his

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in management, and the business was kept track of and discontinued when it became apparent that it was not profitable.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 109; Dec. Dig. § 92.*]

In Equity. On exceptions to the account of James B. Watson, receiver. Account confirmed as corrected.

See, also, 163 Fed. 672; 173 Fed. 634.

S. B. Price, for exceptants.
Harry S. Knight, for receiver.

ARCHBALD, District Judge. The exceptions will be taken up and disposed of in their order.

1. It would have been well for the receiver to have charged himself with the inventory, and to have taken credit, according as it was disposed of, which would have enabled those interested to keep better track of it. It is said that this was not practicable, because of the manner of running the business, which the court sanctioned, and, if this be so, that is the end of it. At all events it is not vital. That the receiver has accounted for all that came into his hands from that source, there can be no question, and that is all in any event that can be asked of him.

2, 3, 4, 5, and 6. These exceptions all relate to the subject of receiver's certificates, but, except the last two, are of no particular significance. In order to try and put the property into working shape, the receiver was authorized to borrow money to the extent of $30,000 and issue receiver's certificates. Complaint is made that the account is not so stated as to disclose whether the funds obtained were in fact applied to this purpose, expenditures on improvement account being mingled with operating expenses. But this only goes to the form of the account, and the way these expenditures are kept track of, as to which, it is said, the same as with regard to the inventory, that the only practicable course was followed. At the most, if the exceptions were sustained, it would merely call for a restating of the account, in order, if possible, that it might be more informing. But this does not seem to be necessary. Full opportunity was given to examine the receiver with regard to just how the money obtained on the certificates was expended, without anything being elicited to call what he had done in question. Conceding that certificate holders were interested to see that the money raised went into the property, it being ordered for that purpose and affecting their security, as nowhere near enough was bid at the sale to cover the certificates, the diversion would have to be large to be of any materiality, and, if it was, there would be no difficulty in detecting it. In either alternative the subject is of no consequence. But the fact is, as shown by the account, that some $5,600 over and above the $30,000 authorized was expended in betterments, which the exceptants in fact complain of, so that the receiver was in no way derelict in this respect; in addition to which, an effort is made in the account to point out as clearly as possible, item by item,

the expenditures chargeable to the receiver's certificates, which specifically meets the objection that this is not indicated.

7. The objection that the receiver has not charged himself with the rent received from the lease of the mill, authorized with the Pennsylvania Paper Company, is due to a misconception. An examination of the account shows that both the rent paid and the materials and supplies sold to that company are fully given. The receiver might have made a separate statement of the debits and credits bearing on this point, which would perhaps have made things clearer, but he was not bound to do so, and it does not render the account objectionable that he did not.

8 and 9. The balance of $1,238.80, due to Struthers & Wells, on construction work, was expressly approved by the court in the foreclosure decree. But even if open to objection notwithstanding that, there is nothing suggested to call in question the propriety of its allowance. It is due for improvements made at the mill, which went to enhance the value of the plant, and so to increase the security of the receiver's certificates, of which the holders ought not to complain. And the fact that the amount expended exceeded the original estimate is of no consequence, so long as it was necessary to accomplish what was set out to be done, of which I am fully satisfied. Nor, as an unsettled debt of the receivership, are the certificate holders in a position to question it, as I have endeavored to point out elsewhere.

10. There is no objection, as I understand it, to the receiver's having retained counsel to defend against the mechanic's lien of the Newhall Engineering Company, entered in the common pleas of Columbia county, on which a scire facias was issued and brought to trial. There was no one else in shape to contest it, the Pennsylvania Paper Mills Company being bankrupt; and, as the result of the contest, the claim was reduced from $17,000 to $8,000, to the material advantage of all parties. The only question, therefore, is as to the amount to be allowed to counsel in this connection. Mr. Ikeler was paid $100 as a retainer, and $500 more is asked for, to be divided between him and Mr. Knight. The case took a week to try, and something more than that to prepare for, and the amount in controversy involved some responsibility. It seems to me, however, that $500 in all is a fair allowance for these services. In some jurisdictions, perhaps, this amount would be regarded as meager. But, all things considered, it is about right, in my judgment here, and will be allowed accordingly.

For general services in the course of the receivership, $2,500 is further asked for Mr. Knight and Mr. Scarlett. Mr. Scarlett appeared at the beginning of the case, and is said to have been consulted to a certain extent subsequently. But, so far as I can see, he has done nothing appreciable beyond that. Separating the allowance to him from that going to Mr. Knight, $500 ought to cover it. The services of Mr. Knight, however, have been extended and arduous, both in the way of counsel and the procuring of orders in court from the time the receiver was appointed in March, 1906, until the account was filed in December, 1908, some two years and nine months later; for which $2,000 is certainly not out of the way, as things are reckoned.

It is true that $800 has already been allowed and paid him. And he is to receive $250, as just stated, on account of the defense of the Newhall claim, which would run the amount up to over $3,000, and seem somewhat more than it ought to be. Under the circumstances, I think the $800 should be taken as a payment on account of the $2,000 now allowed, and not in addition to it, limiting the aggregate counsel fees in the case to $3,000, which is quite a substantial total. It is to be noted that the $350 allowed to Mr. Knight, as attorney for the special master who conducted the foreclosure sale, is not included in this, but may be properly considered in judging of what altogether he gets out of the transaction.

11. There can be no valid objection to the receiver's expenses. These were made necessary by his varied duties, and represent actual cash disbursements, which he could hardly be expected to pay out of his own pocket. Nor is anything suggested to in any way impeach their integrity. The compensation to be allowed him depends on the character and extent of the services rendered, as well as the responsibility assumed in the care and management of the property. There has been paid to the receiver on this account $1,300, and $2,500 more is asked for, in addition to which there is a fee of $150 for conducting the foreclosure sale as special master, making a total, all told, of $3,950. The receivership extended over a period of two years and nine months, and the duties involved were by no means light or simple. Taking all that is asked, it would amount to about $120 a month on an average, which is as little as could be expected for any one of sufficient ability to meet the requirements of the position. It is to be remembered that, in taking such a place, a person has to put aside his ordinary pursuits and be subject to all manner of demands upon his time and attention, in a matter which is merely temporary, and can add nothing of permanent advantage to him, if, indeed, it does not prove an actual detriment. There is also the possibility of being held liable for mistakes, involving serious responsibility, which no one ought to be asked to assume without being correspondingly compensated.

12 and 13. These exceptions do not go to anything in the account, the burden of their complaint being simply that the business was not conducted by the receiver at a profit, running behind, instead of making something. This is not a fact, although it is true that the receivership as such was a failure, and had better never have been entered upon. No one regrets this more than the court, the sequel justifying the reluctance with which it was agreed to in the beginning. But whatever mistake was so made, the receiver, of course, is not responsible. He did the best that he could, taking the advice of those on whom he had the right to rely, and among them Mr. Egolf, one of these very exceptants, and going to the court also for directions. The trouble was, he was attempting the impossible. The property of the defendant company as a paper plant was a failure, and had been from the outstart; and there was no chance to make anything out of it— at least, not by a receivership. It is said that the receiver was bound to see that he did not fall behind, and that, if he ran at a loss, without

taking pains to know it, he is liable. Gutterson v. Lebanon Iron & Steel Co. (C. C.) 151 Fed. 72. But while this may be true, there is nothing to show that he did not take due precaution to know the condition of the business as he went along, or that he kept on at a loss after the fact had been brought home to him. The mistake, if any, was not so much in running the plant, as in undertaking to make it over. The receiver was encouraged to do this, however, by those who were supposed to know, and is not to be blamed for it. Nor have the certificate holders any standing to complain upon that score, the mill having been operated for less than a month after the first certificates were negotiated, and the money raised on them being expressly authorized for the purpose of making improvements. There is much more that could be said in justification of the management of the receiver, but it is not necessary. It is easy to complain when things go wrong, but, so far as the receiver is concerned, there is no just cause for it in the present instance.

14. The plant had to be kept insured, without which the receiver, in case of loss, would clearly have been chargeable. The policies taken out overran the receivership. But that could not very well be helped, the end being uncertain, and it has since been adjusted, and a rebate of $391.20 secured, by which the amount claimed on this account will be reduced; which answers every objection.

15. It is charged that the receiver allowed the taxes to become overdue, and should therefore be held responsible for the added penalty. It would have been well, of course, if they had been paid in time, and if they were not, through neglect, the consequence suggested should follow. But the trouble was that the receiver had no money with which to pay at the time, and there was no way to get it. He could not be expected, of course, to raise it by a pledge of his individual credit.

16. Objection is made to the amount due for engineering services. But these were incurred in the attempt to make over the plant, which was undertaken at the instance of those who were interested. And while, as said above, it was a mistake to attempt it, it is too late to discuss that now, and no blame attaches to the receiver on account of it.

17. In accepting the bid of Struthers & Wells for putting in the wash tanks and blow pit, the receiver acted under the advice of Mr. Egolf, who, as the largest individual holder of receiver's certificates, is one of the principal exceptants. But, leaving him out, it is of no consequence that there was a lower bid. The question was, who was the best bidder, as well as the lowest; and the reasons given for selecting Struthers & Wells, which it is not necessary to go over, entirely justified it.

18. The right of the receiver to compensation is attacked because the business, as it is said, was conducted negligently, and without regard to the interest of creditors; it being suggested, among other things, that the court was not fully advised of the facts when the receiver's certificates were applied for. There is not a particle of evidence to sustain these charges, and they might well be passed over in silence, except that it would not be just to the receiver. Not only is he vindicated in what has been said above, but the records of the case show that

he was careful to an eminent degree in looking after the interests of all parties concerned, undertaking nothing without first fully advising himself upon the subject, and reporting the matter to the court so as to be authorized to do it. It is no fault of his if his efforts to put the property upon a sound basis did not prove successful.

19. This exception harks back again to the failure of the receiver to charge himself with the inventory, it being at the same time complained that the construction and operating accounts are mingled. All this has been considered above, and no further comment is called for.

20. There is nothing in this that requires notice.

21. The credit claimed for the services of watchmen, $929.55, is said to be excessive. But, while this amount seems large, watchmen were necessary, and the receiver has explained what he was compelled to pay, with which I am entirely satisfied.

22. Objection is made that the expenses of the receivership are not entitled to priority over receiver's certificates. But that, if not concluded by the foreclosure decree, is to be considered upon distribution, where it is fully discussed. The settlement of the receiver's account, with which we are now engaged, is another matter.

The exceptions to counsel fees are sustained to the extent indicated, and the allowances therefor are reduced accordingly. The amount due for insurance is also to be credited with the rebate secured. The other exceptions are overruled, and the account is confirmed as corrected.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes