## KENNEBEC BOX CO., Inc., v. O. S. RICHARDS CORPORATION.

## RICHARDS v. BATE et al.

(Circuit Court of Appeals, Second Circuit. March 16, 1925.)

No. 238.

1. Receivers ⬅️81—Receiver is but arm of court.

A receiver is but the arm of the court.

2. Receivers ⬅️92—Order surcharging receiver with losses sustained in continuing business two weeks after ascertainment of fact of impossibility of operation except under deficit held error.

Order surcharging receiver with losses sustained in continuing business two weeks after ascertainment of fact of impossibility of operation except under deficit held error, where he had been appointed through the unanimous request of creditors to conduct a losing business, in the hope that it could be made profitable, and the propriety of abandoning the effort suggested to the creditors by notice would not reasonably

become apparent until the creditors were given an opportunity to meet and discuss the matter with the court as well as with the receiver, at a hearing set two weeks after discovery of the impossibility of operating at a profit.

3. Receivers ⬅️92—Order surcharging receiver with certain items as being preferential payments held erroneous.

Order surcharging receiver with payments to creditors of the receivership, as preferred payments, because made after ascertainment of fact that business could not be conducted at a profit, held error, where the object of the receivership was to turn a losing into a profitable business, and all parties believed when such payments were made that the assets when reduced to cash would be sufficient to pay all creditors in full.

Appeal from the District Court of the United States for the Eastern District of New York.

Creditors' bill by the Kennebec Box Company, Inc., and others against the O. S. Richards Corporation, in which proceeding Lee S. Richards was appointed receiver and subsequently relieved of that office by the appointment of J. B. Johnston in his place. From an order surcharging the former receiver with certain items on objection by J. Herbert Bate and another (299 F. 874), he appeals. Reversed.

See, also, 299 F. 871, 5 F.(2d) 951.

The case above entitled is a creditors' bill of the usual kind, seeking to conserve the property of the defendant corporation in the usual way. The bill alleged and the answer admitted that, although defendant could not meet its obligations as they matured, it had assets of upwards of $150,000 against liabilities of about $108,000.

A receiver was appointed on December 7, 1922. The creditors of this concern were very active, organized a committee of their own, and petitioned the court to appoint a receiver of their own choice, viz. the present appellant, Mr. L. S. Richards. The reasons for urging his appointment (first as coreceiver) was that he was familiar with the defendant's business and had at one time been its active manager.

The receiver originally appointed represented to the court that the business was a small one, that two receivers were unnecessary, and tendered his resignation, which the court accepted, and on January 27, 1923, appointed Mr. Richards as sole receiver, with directions embodied in the order of appointment giving him, in substance, the fullest powers to continue defendant's business and to "operate and manage [de-

fendant's] properties in such manner as will in his judgment produce the best results."

Defendant's business consisted in manufacturing boxes out of material bought by it. It also bought and sold shooks and to a certain extent turned the superior grades of the lumber which it bought into trim and moulding.

Mr. Richards as receiver acted, under his order of appointment, from January 27 to April 30, 1923. At no time were the sales actually made equal to the cost of making and selling that which was sold; but it is plain that Mr. Richards as receiver was, at the desire of the creditors of defendant, endeavoring, not only to conserve, but to create a business. This was frankly the desire of the creditors who so unanimously requested the court to put Mr. Richards in office.

The period of the first receivership, according to an accountant's report received by Mr. Richards on February 17th, showed an operating loss of about $5,000 a month. This was submitted to the creditors, who desired a further report, which was obtained on March 15th, and showed a continuing operating loss. He then employed a firm of public accountants, who on April 7th rendered a preliminary report showing a continuing operating deficit. On April 12th a final report was rendered, definitely showing a loss of about $10,500 under the first receiver and one of $12,291.54 under Mr. Richards himself. He then determined to lay the matter before the court, having himself concluded that it was impossible to keep on with the business, summarizing his reasons to the creditor's committee by saying that the "overhead expenses were entirely too high for the business." On April 18th his attorneys gave notice that the matter would be laid before the court on April 30th, and on May 3d Mr. Richards was relieved as receiver, and Mr. J. B. Johnston appointed substantially to wind up the company's affairs.

Mr. Richards thereupon filed his account as receiver, to which certain creditors, appellees herein, filed exceptions, which are epitomized in one of the Lafferty Company's specifications "that by reason of reckless mismanagement and improper acts of (Richards as receiver), the assets of the estate have been wasted to the detriment of the creditors."

Thereupon the court below sent the Richards account and the exceptions thereto to a master, who reported that, since Mr. Richards by April 12th at the latest knew that

the venture of continuing defendant's business was a losing one, he should be surcharged with the sum of $5,779.43 lost by the operation of the business during the last two weeks of April.

The master also found that during the period above stated Mr. Richards had paid out to those who had sold material to him as receiver the sum of $3,865.10; inasmuch as the receiver at that time had not enough funds in hand to pay all his own creditors (i. e., those created during receivership) in full, that such payments constituted a sort of preference with which the retiring receiver should be surcharged; provided, however, that none of the so-called preferred creditors should be "permitted to participate in any distribution made by (the final receiver), until he shall have restored to (Mr. Richards) the amount of the preference."

With some modifications not here important, this report was confirmed, and Richards ordered to turn over to Mr. Johnston as receiver the sum of $8,659.70, with interest from April 30, 1923, and in addition to pay costs of the proceedings before the master, amounting to $787.80. From this order Richards appealed.

Before the entry of the order appealed from, it was known in the court below and is now admitted that the present receiver, Mr. Johnston, sold all the assets of the defendant herein, but at such prices that the funds then and now in his hands will not only provide nothing for distribution among creditors of defendant existing when bill was filed, but are insufficient to pay in full those who dealt on credit with receiver Richards and his predecessor. There is no evidence showing or tending to show that any one suspected before Mr. Johnston's sale that the entire assets of defendant would not sell for enough to pay the losses of the receivership.

Bassett, Thompson & Gilpatric, of New York City (Walter H. Gilpatric, of New York City, of counsel), for appellant L. S. Richards.

Myron Butler, of New York City, for J. Herbert Bate and other objecting creditors.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] As a basis for the consideration of this appeal, it is to be remembered that any receiver is but the arm of the court, that the court can only be in-

formed concerning the property in its charge by evidence, and that, in the appointment of Mr. Richards as receiver, the court yielded to the insistence (not too strong a word) of an overwhelming majority of the creditors.

The principal piece of evidence at hand when any receivership began was that the complaining creditors averred, and the defendant agreed, that its assets in early December, 1922, exceeded its liabilities by upwards of $40,000, and that this piece of evidence was to say the least grossly mistaken did not appear until after Mr. Richards ceased to be receiver.

It is evident from the record that defendant's creditors believed that they had this substantial margin of assets to rely upon, and desired the receiver of their own choice to maintain a going business and if possible increase it for their own ultimate benefit. And Mr. Richards was almost in terms authorized by the order appointing him to do these things so much desired by the parties most deeply interested, the creditors.

It is not possible to lay down in advance any code descending into particulars for the conduct of a receivership. Any effort so to do could only be founded on observation of the conduct of past receiverships; and the business part of a receiver's duties covers the whole range of the business world, where experience is of course a guide, but can never furnish a code.

A receiver's method of discharging his duty must always vary with the terms of his appointment—which may be broad or narrow; and the terms of Mr. Richards' appointment were about as broad as possible. He had the amplest authority to buy on credit, and to employ assistants of skill appropriate to the business in hand, not mere clerks.

There has been no attack made upon Mr. Richards' business experience, which was the reason for the creditors choosing him; and none upon his good faith in undertaking the work he was asked to perform. That the business had not been wholly successful was known by the mere filing of this bill in equity; and that it continued to show an operating loss was demonstrated by the efforts of the first receiver. The case therefore does not resemble one wherein losses began suddenly to appear. The very purpose of choosing Mr. Richards was to endeavor to turn a losing into a going business.

Such very general legal rules as exist in matters of this kind are well and sufficiently set forth in Pusey et al. v. Pennsylvania, etc., Mills (C. C.) 173 F. 629, and Gutterson et al. v. Lebanon, etc., Co. (C. C.) 151 F. 72. It was there held that a receiver is not chargeable with a loss resulting from his conduct of a business when it was done under the direction of the court at the instance of parties in interest, and the loss was not due to any fault of his, and when the unprofitable business was discontinued as soon as its lack of profit became apparent.

We have stated the facts about this receivership, supra. The result is, it was always known that there was an operating loss; the reasons for it were being studied by Mr. Richards; that was the very reason for appointing him. If business was to stop as soon as an operating loss was discovered, bankruptcy might just as well have been declared instead of asking for a receivership of conservation. By approximately April 12th Mr. Richards had discovered and announced that owing to disproportionate overhead expenses the business could not be profitable.

[2] In the court below this receiver has been surcharged substantially because he did not immediately cease all business, stop every expense, and lock every door. We think it is asking too much to impose so extreme a duty upon an arm of the court. He was entitled to the direction of the court, and it was a reasonable prelude to obtaining that direction to notify the creditors who had sought his appointment of what he thought the court ought to do. He had been appointed to conduct a losing business, because the creditors themselves wished it conducted, and the propriety of abandoning the effort would not reasonably become apparent until the creditors were given an opportunity to meet and discuss the matter with the court as well as with receiver. For these reasons we hold that it was error to surcharge Mr. Richards with the losses thought by accountants to have been incurred during a period reasonably necessary to notify creditors of his desire to quit operations.

[3] With respect to the so-called preferential payments made to certain creditors of his own receivership, the appellees rely upon the Gutterson Case, supra, holding that it is the duty of receivers, on ascertaining that the business of a receivership is being conducted at a loss, to make no payments to its creditors except pro rata and for preferences given after that they should be held personally responsible. This is true,

but it is a matter of degree; it is not a point upon which any absolute rule can be laid down applicable to all business cases. It is always to be remembered here that court, creditors, and receiver were entitled to rely upon the assertion and agreement that lay at the foundation of this case, viz. that behind any receivership was a capital (so to speak) of about $40,000. That the receivership could not pay as it went was not only known, but was (as above pointed out), the very foundation for this litigation. We are convinced that no one supposed for a moment in April, 1923, that when all the assets of the defendant were reduced to cash there would not be enough to pay the going losses incurred by a receivership of four months and a half. Under such circumstances we do not think that this business was showing such a loss as to make payment of receivership creditors proper on a pro rata system. There was no basis for such system. Every one supposed that they at all events would be paid in full. We are therefore of opinion that what will ultimately turn out to have been overpayment to a few of the receivership creditors were not proper matters of surcharge as against this appellant.

As appellant should have been exonerated in the court below, he is also relieved from the payment of the special master's costs, and the order against him is reversed, with costs against the excepting creditors, appellees.