MAHONE et al. v. SOUTHERN TEL. Co. et al.

FARMERS' L. & T. Co. v. SAME.

(Circuit Court, E. D. Virginia. December 13, 1887.)

ATTORNEY AND CLIENT—LIEN FOR SERVICES.—PURCHASE PENDENTE LITE.

In a suit by bondholders to foreclose a mortgage of the corporate property and franchises, certain bondholders appeared, by counsel, and contested the creditors' right to proceed, and took various steps during the progress of the cause, involving labor and responsibility on their counsel. Subsequently, during the progress of the litigation, these contesting bondholders sold their bonds. On petition by their counsel to be allowed a fee, payable out of the dividend which would go to these bonds, *held*, that they had a lien upon such dividend, and that the purchasers of the bonds *pendente lite* took subject to this lien.

On Exceptions to Master's Report.

Petition of Carrington's executor and W. W. Henry to enforce lien for attorney's fees against the dividends on certain bonds formerly owned by their clients, which dividends were a fund in court. The suit in which the services were rendered was one in which Mahone, a bondholder, was plaintiff, and the Southern Telegraph Company, defendant; the petition alleging that defendant was insolvent, and seeking to wind it up. . In this suit the Farmers' Loan & Trust Company filed a cross-bill to foreclose its mortgage. . A receiver was appointed, who, under authority of the court, entered into a traffic arrangement with the Mutual Union Telegraph Company. At this stage of the proceedings, petitioner's clients, bondholders of the Southern Telegraph Company, came in and attacked, unsuccessfully, the regularity of the proceedings. After abandoning an appeal they sold their bonds for value in the New York market.

*W. W. Henry*, for himself and Carrington's executor.

An attorney has an equitable lien on his client's papers, and the judgment obtained for him, for all his services in the case (*In re Paschal*, 10 Wall. 493; *Cowdery* v. *Railroad Co.*, 93 U. S. 354, 355; *Wylie* v. *Coxe*, 15 How. 519, 520;) and that, whether the amount of his compensation be agreed upon, or depends on a *quantum meruit*, (*Renick* v. *Ludington*, 16 W. Va. 378.) The sale of the bonds operated as an equitable assignment of the decree establishing them, and the purchasers took them subject to all equities, whether they had notice of them or not. *Sexton* v. *Pike*, 13 Ark. 193; *Renick* v. *Ludington*, *supra*. Those buying negotiable securities from litigants, with actual notice of the suit, must abide the result of the litigation. *Scotland Co.* v. *Hill*, 112 U. S. 185, 5 Sup. Ct. Rep, 93. The assignment of the bonds was the transfer of negotiable paper, after maturity (which occurred on the default in payment of interest as therein stipulated) and judgment, and the transferee acquired noth-

ing more than the rights of the transferrer. 1 Daniel, Neg. Inst. § 724*a*; *Davis* v. *Miller*, 14 Grat. 5.

*John S. Wise*, for purchasers of the bonds.

Notice is a necessary basis of the lien as against the defendant, (*Read* v. *Dupper*, 6 Term R. 361; *Ackerman* v. *Ackerman*, 14 Abb. Pr. 229; *McDonald* v. *Napier*, 14 Ga. 89; *McDowell* v. *Railroad Co.*, 4 Bosw. 670;) so in states where there are statutes, (*Stone* v. *Hyde*, 22 Me. 318; *Dodd* v. *Brott*, 1 Minn. 270, Gil. 205;) and as against the assignee, (*Grant* v. *Hazeltine*, 2 N. H. 541; *Lake* v. *Ingham*, 3 Vt. 158.) An attorney has no claim on a fund in court against mortgagee or judgment creditor, even though these be his own clients. In distributing money the court of common pleas is guided by the liens of record.　*Dubois' Appeal*, 38 Pa. St. 231.　*Lis pendens* does not apply to negotiable securities purchased before maturity, nor to articles of commerce sold in the usual way.　*County of Warren* v. *Marcy*, 97 U. S. 105.

Hughes, J.　Petitioners say, in their brief, that they were employed on behalf of Charles Fowler and F. W. Bound, as well as other persons interested in the Merchants' & Bankers' Telegraph Company, to represent in this court the bonds of Fowler & Bound, and to conduct the litigation in their names.　They aver that the litigation was not confined to the proof of the said bonds, but involved the jurisdiction of the court in the suit, and the regularity and competency of the pleadings.　Their effort was to transfer the litigation to New York, where the trustee in the mortgage, who was the complainant in the cross-bill in the suit here, had already filed a bill.　Petitioners also attacked the validity of the issue of $629,000 of the bonds of the defendant company, including those held by Mahone, the plaintiff in the original bill.　They also attacked the traffic arrangement which was made by the receiver of this court with the Mutual Union Company.　They also, on the requirement of their clients, prepared the case for an appeal to the supreme court of the United states from the final decree of this court settling the rights of the creditors of the defendant company, which appeal their clients afterwards abandoned, having finally determined to sell their bonds.　Petitioners allege that before this sale of their bonds by their clients, they themselves filed a petition stating their services and charges, and praying that their claim be paid out of the general fund in court, which had resulted from the sale of the defendant company's property.　They furthermore aver that the persons who afterwards purchased the bonds of their clients had notice of their claim, and alleged lien upon the fund due their clients, through their counsel, Mr. John S. Wise.　Their petition for payment out of the general fund was disallowed by the court, and now, claiming a counsel's lien, they pray that the fee and charges due them as counsel, for services performed under the orders of their clients, and for representing the bonds of their clients in this litigation, and proving them before the master, be paid by the court out of the dividends declared upon said bonds.　They aver that they received a retaining fee of $200 from their clients, and no other compensation, and they pray now for an allowance of $2,500, out of the fund due on the bonds which they represented and proved.　This petition was referred, among other things, to the master.

Before him no objection was made to the amount of the fee which they claimed. The master reported against the claim of Carrington's executor and Henry, basing his action solely upon the ground, as he states, that the bonds of Fowler & Bound, on which petitioners claim a counsel's lien were sold and passed into the hands of the New York & Southern Telegraph Company, without any knowedge of the claim now asserted by petitioners, "long before their petition was filed."

The questions presented by the petition, the proofs, and the very elaborate and able briefs of Mr. Wise for the purchasing company, and of Mr. Henry for himself and Carrington's executor, are the following: (1) Were professional services rendered at the requirement of petitioners' clients? (2) Do they constitute a lien upon the fund decreed to Fowler & Bound or their assignees?

When the petition of these counsel for an allowance out of the general fund in court was before me, I had no hesitation in dismissing it. The labors of these counsel were adverse to the purposes of the suit, and wholly obstructive. They were not directed to the benefit of the fund, and did not inure to its benefit. There was, in my opinion, no imaginable ground on which a claim against the fund, on their part, could be rested, and their petition was dismissed. The question now is a different one. These petitioners rendered various services as counsel, under the direction and at the command of their immediate clients. They did their masters' bidding, at the request and for the supposed interests of their clients. How valuable or effectual their work was to the general fund, or even to their especial clients, is not to the point in the present inquiry. They did work and labor for their own clients at the special instance and request of those clients, and are entitled to a *quantum meruit* compensation from some source. Primarily, it should probably come from their clients personally; but these are residents of a distant state, and may not be solvent or accessible. Petitioners prefer to look to the fund, near at hand, in this court, which has accrued from the bonds of their clients which they proved in the cause, and upon which a dividend was decreed. And the question is, have they a claim upon this fund superior and anterior to that of the present holders of the bonds, and by direct or indirect assignment from the clients whom the petitioners represented in this suit.

It is not denied—it cannot be denied—that petitioners would have a valid counsel's lien upon the dividends decreed upon the bonds of Bound & Fowler if the bonds were still owned and in the hands of these particular holders. But, those bonds having been sold after dividends had been decreed upon them, the question arises whether the lien followed them, and whether they are still subject to the equity of the *quantum meruit*, which petitioners at one time, beyond doubt, held upon them. The object of the suit in which the bonds were proved was to foreclose the mortgage by which the bonds were secured, call in the bonds, and liquidate them as far as the property of the defendant company would do so. From the very nature of the suit the holder of every bond had *constructive* notice of the litigation. Moreover, it is difficult to conceive

how the holder of any of the bonds did not have *actual* notice of the pendency of the suit at every stage of its progress. It is clear to me that the doctrine of *lis pendens* applied to all the bonds, and all the holders of them; and, moreover, that if any of the bonds changed hands during the litigation, the purchasers took them with actual notice of the suit, at least to the counsel who represented them in it. As soon as the suit was in progress, certainly as soon as any bonds were proved before the master, the bonds proved ceased to be absolutely negotiable, and remained negotiable only in a *quasi* manner; that is to say, remained negotiable, subject to all the equities that had attached to them by having become part of the subject-matter of the suit. Although still transferable by mere delivery from seller to purchaser, yet, technically, the transfer was an assignment under which all the equities that bound the bonds as subjects of the suit remained with them and bound the dividends which accrued by decree of court to the bonds. It was wholly unnecessary to impound the bonds in the hands of the master in order to fix and perpetuate this lien upon them.

The numerous authorities cited in the able briefs, both of Mr. Wise and Mr. Henry, more particularly the later decisions of the supreme court of the United States on the subject of counsel's fees, and the case of *Renick* v. *Ludington,* 16 W. Va. 398, cited and enforced by Mr. Henry, establish the propositions I have stated. The lien of an attorney upon the fund he represents in court, as against his own clients, and their assignees, *pendente lite,* is so well established, and ought by this time to be so well known to those who deal with litigants in respect to bonds which become the subject-matter of litigation, that no hardship can be presumed to result, or ought to result, from the enforcement of it by the courts.

I am clearly of opinion that the services rendered their clients by Carrington & Henry, at the instance and request of those clients, ought to be compensated, and constitute a lien upon the dividend that was declared by the court upon the bonds of Fowler & Bound. I might award a less or greater amount as a *quantum meruit* for those services than the one which the petitioners claim, if that matter had been litigated before the master and passed upon in his report. But, in the present stage of the controversy, it does not seem competent for me to open and consider that matter. I will therefore sign a decree granting the prayer of the petitioners.