UNITED STATES v. BOYD et al. (EWART, Intervener).

(Circuit Court, W. D. North Carolina. April 5, 1896.)

ATTORNEYS—LIEN FOR FEES.
   The United States courts protect attorneys in their fees, and therefore, in a suit by the United States to enjoin a sale of timber effected by an attorney for a band of Indians, the timber having been sold, and the sale approved by the court, it was proper to permit the attorney to intervene for the allowance of his claim for services in effecting the sale, to be paid out of the proceeds.

This was an intervening petition, filed by H. G. Ewart in a suit in equity brought by the United States against D. L. Boyd and others to enjoin the sale of timber.

R. B. Glenn and D. A. Covington, for the United States.
L. M. Bourne, G. H. Smathers, and W. T. Crawford, for defendant.
Before SIMONTON, Circuit Judge, and DICK, District Judge.

SIMONTON, Circuit Judge. There is one question remaining open in this case. That arises upon the claim of H. G. Ewart, Esq., for

compensation for his services to the Eastern Band of Cherokee Indians. This matter was referred to the standing master, and he reports the testimony. It appears that Mr. Ewart was under contract in writing with the proper authorities of the Eastern Band of Cherokee Indians to effect a sale of timber for them. The timber has been sold. The sale has been approved in this court in proceedings to which the United States and the Eastern Band of Cherokee Indians were parties. In sustaining his claim, the petitioner introduces evidence as to the value of his services, and substantiates this with a verdict obtained in the superior court of Henderson county, N. C. There does not appear to be any question that the services were rendered. The objections go—First, to the extravagance of the charge; second, to the want of capacity in the Indians to make the contract; and, third, the failure on the part of the petitioner to get the approval of the secretary of the interior to the execution of the contract. The contract, however, has been made, and has been ratified by this court in these proceedings, after examination into it. This disposes of the second objection. It also disposes of the third, because the only reason for getting the assent of the secretary of the interior was to secure the execution of the contract. This end has been accomplished. The charge made by the petitioner is a large one, so much so as to justify the district attorney in resisting it. But to sustain it he has the verdict, taken after investigation, as the master reports, in the state court, and also evidence outside of it. To repel this there is no evidence. Under these circumstances the court would assume an unusual responsibility in differing from these witnesses, there being an entire absence of evidence showing fraud and imposition. It has been suggested that this intervention has no place in the present proceedings, which were filed to enjoin the sale of this timber. But it is germane to this subject. The validity of this sale was at issue,—a sale effected by the petitioner, and incidentally the distribution of the proceeds of sale if it be sustained. Before this can take place, the petitioner wishes his claim investigated. Strictly speaking, he cannot be said to have a lien on these funds, as the money is not in his hands. In re Paschal, 10 Wall. 483; McPherson v. Cox. 96 U. S. 404. But an attorney always has the protection of the court in securing his fee, and he can ask for it. For want of a better word, it can be called an "equity." In Massachusetts & Southern Const. Co. v. Township of Gill's Creek, 48 Fed. 147, the matter is stated thus:

"There can be no doubt that from an early period courts have always interfered in securing to attorneys the fruit of their labors, even as against their own clients. Ex parte Bush, 7 Vin. Abr. 74. This is an equitable interference on the part of the court (Barker v. St. Quintin, 12 Mees. & W. 441),—the enforcement of a claim or right on the part of the attorney to ask the intervention of the court for his own protection, when he finds that there is a probability that his client may deprive him of his costs (Mercer v. Graves, L. R. 7 Q. B. 499). See, in full, In re Knapp, 85 N. Y. 285. For the want of a better word, it is called a 'lien'; but this so-called 'lien' is limited to the funds collected in the particular case in which the services were rendered. In re Wilson, 12 Fed., 235. This is the rule followed by all courts, without requiring the sanction of a statute. In England, until the statute of 18 Vict., the lien of an attorney was confined to the taxed costs and his disbursements.

The courts of the United States seem to protect attorneys in their fees as well as in their taxed costs. In Wylie v. Coxe, 15 How. 415, the courts protected an attorney by securing him the percentage contracted to be paid him on recovery. In Cowdrey v. Railroad Co., 93 U. S. 354, an attorney was secured the fee he had expressly contracted for."

In Frink v. McComb, 60 Fed. 486, it was called a lien, and was enforced against a fund in court, not affected by an assignment on the part of the client. And in Mahone v. Telegraph Co., 33 Fed. 702, it followed the dividends on bonds, although the bondholders who had made the contract with the attorney had parted with them long before the dividend was declared. It is clear that the intervention is proper. Let proper provision be made for the petitioner when the funds are all realized.