LEWIS M. RUMSEY et al., Appellants, v. PEOPLES RAILWAY COMPANY et al., Defendants; NATHAN FRANK et al., Respondents.

**St. Louis Court of Appeals, May 8, 1900.**

1. **Funds in Hands of Court, Disposition of.** A charge against a fund in the hands of the court, for disposition among various claimants, is a charge against the *res*, and creates no liability against parties entitled to share in its distribution.

2. ———: ———: EVIDENCE. In the case at bar, there is no evidence tending to signify that the services of respondents should be gratuitous, or that they would forego a legal right to charge the fund brought into court by their exertions, for the reasonable value of such services.

Appeal from the St. Louis City Circuit Court.—*Hon. Horatio D. Wood*, Judge.

AFFIRMED.

*Boyle, Priest & Lehmann* and *Lon O. Hocker & Easley* for appellants.

(1) In the absence of an express provision in the mortgage deed of trust authorizing it, the allowance of an at-

Rumsey v. Frank.

torney's fee was unlawful. The fact that a trustee, with power of sale, refused to sell and thereby rendered the foreclosure suit necessary, does not authorize a decree for the payment of an attorney's fee. Fowler v. Equitable Trust Co., 141 U. S. 407; Bynum v. Frederick, 81 Ala. 489; Van-Marten v. McMillen, 39 Mich. 304; Hardwick v. Bassett, 29 Mich. 17; Sage v. Riggs, 12 Mich. 313; Fayette v. Free Home Ass'n, 27 Ill. App. 307; Cheltenham Imp. Co. v. Whitehead, 26 Ill. App. 609; Sichel v. Corrillo, 42 Cal. 493; Makarel v. Roffour, 51 Cal. 242; Monroe v. Fohl, 14 Pac. 514; 1 Wittse Mort. Forc., sec. 873. Had the mortgage deed of trust provided for the "expenses of sale," it would only have included ordinary expenses, "not extraordinary charges such as attorneys' fees for services rendered in making the foreclosure." Thomas v. Jones, 84 Ala. 304. (2) The fees allowed in the case to Mr. Frank can not be recovered for want of allegation in regard thereto in the petition. Lee v. McCarthy (Cal. 1894), 35 Pac. Rep. 1034; Knight v. Heafer, 79 Ill. App. 324. (3) The bonds which were the basis of the foreclosure suit had not, by their terms, matured. They could only become payable by the election of the holders. If the mortgage had provided for the payment of attorneys' fees, they could not have been collected without notice of the exercise of the option to declare the principal debt due. Clemens v. Luce, 35 Pac. Rep. 1032. (4) There is nothing to show that the mortgage deed of trust gave any lien for attorneys' fees. (5) This question must not be confounded with an action by a trustee with regard to a trust estate, nor with that character of case where a trustee is wasting the estate, and a beneficiary sues for its protection as against the trustee. Trustees v. Greenough, 105 U. S. 531.

*Chas. W. Bates* for respondent.

No brief furnished reporter.

BOND, J.—On the tenth of February, 1897, Charles Green as principal stockholder in two corporations owning different lines of street railways in St. Louis, each of which was heavily indebted to holders of their respective bonds (secured by mortgages), and also for floating indebtedness, entered into a contract with three parties, termed a syndicate, for the purpose of effecting a reorganization of said corporations by consolidating them into a new corporation to be formed for that purpose, which should be required to pay in full all of the indebtedness secured and unsecured of the two former corporations. The contract further specified that said Green should institute whatever proceedings he deemed expedient to accomplish its objects, but that if foreclosure was resorted to for this purpose, the expense to the parties constituting said syndicate should not exceed $6,000. In furtherance of the scheme and plan of this contract L. M. Rumsey, a considerable holder of the three mortgage bonds of one of the corporations (Peoples Railway Company) on behalf of himself and similar creditors employed Seymour D. Thompson and Nathan Frank to begin an equitable action against said Peoples Railway as an insolvent corporation asking for the appointment of a receiver of all its assets, real and personal, mortgaged and unmortgaged, to be managed as a trust for the benefit of creditors, until a decree could be had for the foreclosure of the third mortgage given to secure the fund held by himself and other persons. Out of the proceeds of a sale thereunder and the income and earnings of the corporation while in the hands of the receiver payment was prayed of the demands of all creditors of said corporation according to their respective priorities. The petition in question concluded by asking for such relief as the holders of the third mortgage bonds and other creditors who might become parties should be entitled. Upon the appearance to this action of defendant and other parties

in interest, a decree was rendered establishing the claims of creditors and ordering a foreclosure of the mortgage and appropriation of the assets in the hands of the receiver, which decree was reversed on an appeal therefrom to the supreme court (144 Mo. 175). Before the prosecution of this appeal Messrs. Thompson and Frank upon notice to Rumsey that they had become cognizant of a plan on·his part to thwart the purposes of the contract in pursuance of which the action on behalf of himself, and such creditors as might join, had been instituted, were permitted by the court to withdraw from further appearance as his solicitors. Upon the remand of the cause for a new trial a second decree of foreclosure was entered, which as to payments and amounts allowed, provided, among other things, as follows: "And it is further ordered, adjudged and decreed that the funds realized from the sale of said mortgaged premises shall be paid into court, and which, together with the net earnings arising from the operation of said road while in the hands of the receiver herein, shall be applied as follows:

"1. To the payment of costs and expenses of this cause, and to all proper expenditures attendant upon said sale or sales, including compensation of the special commissioner, and also other proper allowances, compensation and disbursements as shall be fixed, allowed and taxed by this court."

The present proceeding is on motion of Seymour D. Thompson and Nathan Frank for a reasonable allowance for their services as solicitors for plaintiff up to the time of their withdrawal. The court after hearing evidence tending to prove the foregoing facts, and also as to the value of such services, ordered $1,500 to be paid to such solicitors out of the fund in the hands of its clerk in this cause, from which ruling plaintiff appealed to this court.

The original action in this case was strictly equitable under the allegations and prayer for relief contained in the petition. Hannah v. Davis, 112 Mo. loc. cit. 607; Brim v.

Fleming, 135 Mo. 597; Long v. Long, 141 Mo. loc. cit. 371. Its object was to bring into court for ultimate sale and appropriation two species of property: first, that covered by a third mortgage; second, incomes and earnings of the mortgaged property, together with the cash and evidences of debt belonging to the mortgagor. Upon none of the property embraced under the latter classification was there any lien or charge until it was impounded and paid into the hands of a receiver to be administered as a trust pending a final decree in the cause. When a trust is administered in a court of equity all the costs of its administration are proper matters of allowance against the fund to be administered. Among these are included costs as between solicitor and client, which are universally awarded in the absence of a contract for different compensation. By express allegation of the original petition and by the terms of the ultimate decree in this cause a fund totally distinct from the property embraced in the third mortgage was brought into a chancery court, managed by one of its officers as a trust, and finally ordered to be distributed among the several parties who had established their respective rights to participate in its enjoyment. That such a fund is subject to a proper allowance by the court for the services of the solicitors in the action through which its benefits were realized by the plaintiff and other creditors, seems too plain for discussion. Whether the court in this instance could have legally made any allowance in favor of the plaintiff out of the proceeds derived solely from the sale of the mortgaged property, need not be considered. It had in its possession, as shown by its decree another fund out of which such an allowance ought to have been made in favor of the solicitors whose professional skill and ability had brought it into court, unless they were debarred from receiving it by some failure of duty or contract for other compensation. It is insisted by the learned counsel for appellant that the contract of the movers in this pro-

Rumscy v. Frank.

ceeding that Mr. Rumsey, the plaintiff, should not be personally chargeable with the expenses of the litigation, constitutes a legal obstacle to the allowance in their favor. We are unable to concur in this view. A charge against a fund in the hands of the court for disposition among various claimants is a charge against the *res* and creates no personal liability against the parties entitled to share in its distribution. The letter addressed to the plaintiff in this case was simply intended to relieve him from any personal obligation to pay his solicitors. This is the extent of its language. It was not intended to signify that their services should be gratuitous, or that they would forego a legal right to charge the fund brought into court by their exertions for the reasonable value of such services. It is further insisted by appellant that the withdrawal of the movers from further conduct of the litigation on behalf of the original plaintiff, disentitles them to any allowance for the services rendered prior to that time. The record shows they made a full disclosure to their client of the reasons impelling them to this action and predicated it upon the assertion that his action after the institution of the suit would place them, if they acted further as his counsel, in such a position that they could not justly represent other interests which he had agreed the suit should be brought to protect. These representations to their client, if true, and the record shows they were not denied, fully justified their action in declining to represent him further in the litigation. They deserve to be commended for the prompt refusal to continue as solicitors for a client who was indisposed to effectuate his agreement that their services should be rendered for the equal protection of others as well as himself. The selection of a solicitor is the result of the highest trust and confidence in his integrity and skill, and devolves on him the correlative duty of perfect faith in the just and equal protection of all the in-

VOL. 84 app—33

terests confided to his care.   This closeness of relationship creates obligations of the utmost candor between attorney and client, and if it should happen that this is impaired, the connection between the two should instantly cease.   Actuated by a true conception of the duty imposed upon them as counsel, we do not see how Messrs. Thompson and Frank could have acted otherwise under the facts in this record.

Our conclusion is that the judgment in this case must be affirmed.   Judge *Bland* concurs; Judge *Biggs* absent.