## BRAY et al. v. STAPLES.

## GUARDIAN TRUST & DEPOSIT CO. v. GREENSBORO WATER SUPPLY CO.

(Circuit Court of Appeals, Fourth Circuit. July 13, 1910.)

### No. 952.

1. RECEIVERS (§ 60*)—TERMINATION OF RECEIVERSHIP—JURISDICTION—JUDGMENT.

Where a decree provided that in the event the receiver made a report, and no exceptions were filed thereto, the receiver should be discharged, but no report was ever filed, the decree was ineffectual to oust a court of jurisdiction.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 60.*]

2. ATTORNEY AND CLIENT (§ 155*)—ATTORNEY'S FEES—DETERMINATION—JURISDICTION.

Where, by contract between attorney and client, the attorney was only entitled to compensation out of any amount he might recover in the suit, and it was by his skill and ability that a judgment for his client was recovered, which was directed to be paid by a receiver of the corporation defendant in such suit, the court having custody and control of the fund had jurisdiction to determine when it should be disbursed and to whom it properly belonged, and hence had authority to fix the attorney's compensation and direct payment thereof out of the fund.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 316; Dec. Dig. § 155.*]

Dayton, District Judge, dissenting.

Appeal from the Circuit Court of the United States for the Western District of North Carolina, at Greensboro.

Suit by the Guardian Trust & Deposit Company of Maryland against the Greensboro Water Supply Company, in which B. J. Fisher intervened to establish a judgment recovered in the state courts as a prior claim against the assets of the Water Supply Company, to bonds secured by mortgage on the company's plant, etc. A judgment having been rendered sustaining such claim, the amount of the judgment after the death of Fisher was, under order of the Circuit Court, paid to C. A. Bray, trustee of Isabella Fisher and others. On application of John N. Staples to compel payment of his fees out of the fund. From an order granting such relief, Bray, as trustee, and others, appeal. Affirmed.

Originally this was a suit in equity, begun September 29, 1900, in the United States Circuit Court for the Western District of North Carolina, at Greensboro, by the Guardian Trust & Deposit Company of Maryland, versus the Greensboro Water Supply Company.

The purpose of the original suit was to foreclose a deed of trust executed by the Greensboro Water Supply Company on July 1, 1896, to secure 110 mortgage bonds for $1,000 each; default in the payment of interest and in other respects being alleged.

An amended bill of complaint was filed in said suit on August 8, 1901, setting forth that the city of Greensboro had offered $75,000 for the property of the Greensboro Water Supply Company, and that there were persons claiming prior liens, and the prayer of the bill was that such persons so claiming liens be brought into court by subpœna and their rights adjudicated.

Prior to the filing of the said original bill of complaint and the amended

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bill, there had been brought in the superior court of Guilford county, N. C., by B. J. Fisher, a civil action against the Greensboro Water Supply Company, to recover damages alleged to have been suffered by the plaintiff in that action by reason of the alleged wrongful failure of the Greensboro Water Supply Company to supply sufficient water to protect the property of B. J. Fisher from injury by fire. This said action of B. J. Fisher against the Greensboro Water Supply Company to recover damages was tried in the state court, and a judgment for $25,000 in favor of B. J. Fisher was obtained in January, 1901. That judgment was for breach of contract, and the superior court refused to render judgment for tort. The case was taken by appeal of the plaintiff to the Supreme Court of North Carolina because of the refusal of the superior court to render judgment ex delicto. The Supreme Court of North Carolina reversed this ruling of the superior court, and directed that judgment be rendered ex delicto for the amount found by the verdict to be due the plaintiff.

At the June term, 1901, of the superior court of Guilford county, a judgment ex delicto was rendered in conformity with the opinion of the Supreme Court of North Carolina in favor of B. J. Fisher against the Greensboro Water Supply Company.

On the 29th day of September, 1900, a receiver for the Greensboro Water Supply Company was appointed by the United States Circuit Court in the case of Guardian Trust & Deposit Company against the Greensboro Water Supply Company, and the receiver was directed to operate the property of the Greensboro Water Supply Company, and collect all the rents, profits, and revenues of the said company, and all moneys due or to become due it.

On the 29th day of July, 1901, it was ordered by the United States Circuit Judge, in said suit, that notice issue to B. J. Fisher and others to show cause why the property of the Greensboro Water Supply Company should not be sold to the city of Greensboro for the sum of $75,000.

On the 29th day of July, 1901, a decree was passed by the United States Circuit Court confirming a sale of said property to the city of Greensboro for $75,000, and it was further provided in said decree that B. J. Fisher and others have 30 days in which to file pleadings setting up their claims to the funds coming into the hands of the receivers as the proceeds of said sale.

On the 27th day of September, 1901, B. J. Fisher filed an answer to the rule to show cause, in which he reserved to himself all his rights and interests which had theretofore or did then exist or attach by reason of his said judgment obtained in the said court, and by virtue of the laws of North Carolina. In that answer he set out that in June, 1899, his property was destroyed by reason of the failure of the Greensboro Water Supply Company to furnish sufficient water to extinguish the fire, and that this conduct on the part of said water supply company was tortious, negligent, and careless. He alleged further that on the 20th day of July, 1899, he, the said B. J. Fisher, began a civil action in the superior court of North Carolina for damages resulting to him on account of said tort, and that the corporation entered an appearance and filed answer to the complaint of the plaintiff, and that the case was regularly tried at the January term, 1901, of the superior court of Guilford county, and a verdict was obtained for $25,000. It was further alleged that from this judgment the plaintiff in that case, B. J. Fisher, appealed to the Supreme Court of North Carolina, upon the ground that the court had refused to give him a judgment ex delicto against the Greensboro Water Supply Company, and that the contention of B. J. Fisher that he was entitled to such judgment was sustained by the Supreme Court of North Carolina at the February term, 1901.

It is further alleged in that answer that on the 19th day of September, 1900, a receiver was appointed for the Greensboro Water Supply Company, and that prior to the appointment of the receiver he had been the attorney for the defendant, the Greensboro Water Supply Company, in the said suit brought by B. J. Fisher. It was further alleged in said complaint that under section 1255 of the Code of North Carolina mortgages made by incorporated companies upon their property and earnings have no power to exempt the property or earnings thus mortgaged from execution for satisfaction of any

judgment obtained in the courts of this state against such corporation in the courts of the state of North Carolina, for torts committed by such corporation, and that the judgment of B. J. Fisher obtained in the state court was for tort. It was further alleged that the mortgages under which the bondholders claimed, and for foreclosure of which the bill of complaint was filed in the suit brought by the Guardian Trust & Deposit Company against the Greensboro Water Supply Company in the United States Circuit Court, were made and executed by the Greensboro Water Supply Company, subsequent to the legislative enactment referred to, and that the same were by operation of law void as to the said judgment of B. J. Fisher. It was further alleged in said complaint that the judgment of B. J. Fisher was duly docketed, and that the rights of B. J. Fisher were prior to those of the said bondholders.

On the 24th day of March, 1902, a decree was passed by the Circuit Court of the United States for the Western District of North Carolina, at Greensboro, in the suit of the Guardian Trust & Deposit Company giving priority to the judgment of B. J. Fisher against the Greensboro Water Supply Company for $25,000, as claimed by said Fisher. It was ordered by that decree that the receiver appointed in the suit in the United States court pay out of the $75,000 which he held "the sum of $25,000, with interest thereon from the 14th day of January, 1901, the date of the docketing thereof in the superior court of the county of Guilford, N. C.;" and it was further ordered that the costs in the state court and in the United States court incident to and on the said judgment be likewise paid by the receiver out of said funds. It was provided in the said decree that the cause of the Guardian Trust & Deposit Company against the Greensboro Water Supply Company be retained in the Circuit Court of the United States for orders and directions.

On January 9, 1907, another decree was passed in the case of the Guardian Trust & Deposit Company against the Greensboro Water Supply Company in which the following recitals are found:

"It appearing to the court that by the last decree made in this cause directing R. R. King, the receiver of the Greensboro Water Supply Company, to pay out of the funds in his hands as such receiver the judgments of the defendants, B. J. Fisher and others above named in this cause, and to distribute the remainder of the funds in his hands to the bondholders in a manner and form prescribed in the said decree, reserving and holding in his hands the sum of $5,500 for the purpose of meeting the claim of the Southern Stock Mutual Insurance Company, which had intervened in this cause, claiming to be subrogated to the right of the defendant Helen G. Brown and Charlotte J. Gorrell, to the extent of $5,000, money paid by it to those parties under its contract of insurance with them on the property claimed to have been lost by fire on account of the negligence of the Greensboro Water Supply Company; the said insurance company having theretofore instituted an action in the superior court of Guilford county in the name of itself against the Greensboro Water Supply Company for the purpose of establishing its right to the said sum of $5,000 by virtue of its subrogation to the rights of the said Helen G. Brown and Charlotte J. Gorrell, and it now appearing to the court that the said action of the Southern Stock Mutual Insurance Company against the Greensboro Water Supply Company, pending in the superior court of Guilford county, has been compromised and adjusted by the agreement of the said insurance company to accept and receive from the said receiver the sum of $3,000 in full of settlement of all of its right and claim against the Greensboro Water Supply Company, its receiver or bondholders, or the owner or holders of the said Gorrell judgment.

"It is now, by consent of the parties hereto and of the said bondholders, ordered and decreed that the said receiver, R. R. King, pay to the Southern Stock Mutual Insurance Company out of the money or funds in his hands as such receiver the sum of $3,000, in full settlement and payment of all right, recourse, or claim which the said insurance company may or might have against the owner or holders of the judgment of Charlotte J. Gorrell, against the said water supply company; and the said receiver is further directed to pay the cost of the action pending in the superior court of Guilford county of the said insurance company against the Greensboro Water Supply Company."

On March 15, 1907, the receiver in the said suit of the Guardian Trust & Deposit Company against the Greensboro Water Supply Company, pending in the United States Circuit Court, made a report to the court which was as follows:

"That he has paid out under the orders of this court all claims against the Greensboro Water Supply Company, of which he has any knowledge, including the cost of litigation, except a small balance due the clerk of this court amounting to $3.95.

"That in addition to this he has paid out to bondholders under order of this court a dividend of 38 per cent., and that he has on hand now a balance of $2,391.33, which so far as he knows should be applied on the bonds mentioned in the pleadings in this case, less the $3.93 cost above stated.

"Wherefore the receiver respectfully prays that an order be passed by this honorable court directing the application of this money, and that he be discharged from all further liabilities."

On March 15, 1907, a decree of the United States Circuit Court was passed in said suit as follows:

"This cause coming for final order upon the report of the receiver, which shows that after paying out money in accordance with all the orders previously made by this court in this case and the costs, there is a balance of $2,387.31 for distribution to and among the stockholders to whom a previous dividend has been made under the orders of this court: Now on motion it is ordered, adjudged, and decreed by the court that the receiver, R. R. King, be, and he is hereby, directed to distribute among and pay over to the said bondholders the sum of $2,387.31 now in his hands as provided heretofore. It is further ordered by the court that, unless exceptions are filed to the action of the receiver within 30 days next hereafter, he be discharged."

On the 16th day of February, 1909, John N. Staples filed in the said suit of the Guardian Trust & Deposit Company against the Greensboro Water Supply Company a petition in which he alleged that the above suit still remained on the docket of the Circuit Court of the United States for the Western District of North Carolina, at Greensboro, and that he, together with A. L. Brooks, were solicitors of record for B. J. Fisher, whose judgment against the Greensboro Water Supply Company was $25,000 and interest. It is also alleged in that petition that John N. Staples, the petitioner, brought the action of B. J. Fisher against the Greensboro Water Supply Company for damages in the superior court of Guilford county, and that an appeal was taken to the Supreme Court of North Carolina.

The history of the civil action of B. J. Fisher against the Greensboro Water Supply Company and of the suit in equity of the Guardian Trust & Deposit Company against the Greensboro Water Supply Company is set out in that petition.

It is also stated in that petition that "in all of the said proceedings your petitioner was one of the solicitors of the said B. J. Fisher and rendered him faithful and efficient service as such, and that in conjunction with Brooks the full amount of said judgment was collected on the 14th day of April, 1906, amounting as your petitioner is informed and believes, in all, to about $33,053.15. That on the day, namely, the 14th day of April, 1906, by consent of the administratrix of the said Fisher and of Mr. Brooks and your petitioner (the said Fisher himself having heretofore died, and his wife, Isabella Fisher, having qualified as administratrix), the amount of the said recovery above named was paid to Mr. A. L. Brooks as a solicitor of this court, and was received by him as such, he being one of the solicitors in the case together with your petitioner, and by him deposited in the City National Bank to his account, upon the agreement aforesaid, and upon further agreement that he should retain a sufficient sum thereof to satisfy whatever amount should thereafter be determined to be due your petitioner as the other solicitor in the case."

It was recited that an effort was made by arbitration and award to determine the amount John N. Staples was entitled to receive as the attorney for B. J. Fisher for his services in collecting said judgment, but that the award had been set aside. It was further recited by John N. Staples in said petition that A. L. Brooks then held as solicitor $3,500 of the sum which was paid on

account of the judgment of B. J. Fisher against the Greensboro Water Supply Company, in the said action as one of the solicitors for B. J. Fisher; the said Brooks having theretofore paid to the said John N. Staples $3,500, and the said Fisher during his lifetime having paid to the said John N. Staples the sum of $900.

The petition of John N. Staples also recites that said A. L. Brooks is ready and willing to pay the said sum claimed by John N. Staples, but that the representatives of the estate of B. J. Fisher object, and asks that notice issue to the representatives of the estate of B. J. Fisher to show cause why an order should not be passed by the United States Circuit Court for the Western District of North Carolina, at Greensboro, directing the payment to the said John N. Staples of the sum claimed by him.

On February 16th an order was passed by the United States Circuit Court, at Greensboro, directing A. L. Brooks to retain in his hands the money then remaining in his hands, which was received by him in satisfaction of the judgment of B. J. Fisher on April 14, 1906, to await the determination of the amount that John N. Staples, attorney for said Fisher, should receive for his services; the same to be determined by the United States court. It was further provided in said order that notice issue to the representatives of the estate of B. J. Fisher and to A. L. Brooks, to the end that they might appear and show cause why an order should not be passed fixing the compensation of John N. Staples, and directing its payment out of the funds held by said Brooks.

A. L. Brooks filed his answer to this notice to appear on April 14, 1909, in which he admitted that all of the money received by him on account of the judgment of B. J. Fisher against the Greensboro Water Supply Company had been deposited by him in the bank, and had been checked out, but, that he held to his credit as receiver and commissioner of the Fisher estate, by virtue of his appointment as such by the state court, in a different proceeding, the sum of $3,500 "which he retained in the bank out of the account of receiver and commissioner $3,500 in lieu of the other to await the outcome and settlement of the matter of the fee of Col. John N. Staples and the estate."

On March 6, 1909, Isabella Fisher, administratrix of B. J. Fisher, in response to the notice issued to her to show cause why an order should not be passed by the Circuit Court of the United States allowing a fee to John N. Staples out of the moneys held by A. L. Brooks, entered a special appearance and moved that the petition of John N. Staples be dismissed upon the following grounds:

First. Because the suit of the Guardian Trust & Deposit Company against the Greensboro Water Supply Company was at an end, and the court had no further jurisdiction or power to make the order asked for by John N. Staples.

Second. Because the funds received by A. L. Brooks were turned over to him as the agent of the estate of B. J. Fisher, and not as an officer of the court.

Third. Because A. L. Brooks had disbursed and paid out all of the funds so received by him, amounting to $33,000.

Fourth. Because John N. Staples had already sought to enforce his claim for a fee outside of the United States court, thereby recognizing that if he had any claim it was a personal one, with respect to which the United States Circuit Court had no power or jurisdiction.

Fifth. Because the United States Circuit Court had no jurisdiction or authority, in any event, to grant the relief or make the order prayed by John N. Staples, in his petition.

A like answer was made by C. A. Bray, trustee of the estate of B. J. Fisher, who was also brought into court.

The demurrers, being heard on special appearance, were overruled, as will appear by finding of fact of the United States Circuit Court.

Thereafter on April 14, 1909, an answer was filed by the representatives of the estate of B. J. Fisher in which they protested against the court's making any order with respect to the matters set out in the petition of John N. Staples. It was also alleged in that answer that an inspection of the account of A. L. Brooks as solicitor with the City National Bank of Greensboro would disclose that the amount of the judgment of B. J. Fisher against the

Greensboro Water Supply Company was collected by him for the estate and deposited in his name as solicitor, and that all of said amount had been paid out. It was further set out in said answer that there was no agreement by the administratrix of the estate of B. J. Fisher, deceased, by which A. L. Brooks was authorized to hold any money for John N. Staples, and that if any such agreement had been made it in no way gave to the United States Circuit Court jurisdiction to enforce it. The prayer of the answer was that the petition of John N. Staples be dismissed.

The facts pertinent to this case were set out in a paper writing headed "Findings of Fact by the United States Judge," appearing in the record.

On the 27th day of May, 1909, a decree was passed in the suit of the Guardian Trust & Deposit Company against the Greensboro Water Supply Company as follows:

"Upon considering the facts found in the above-entitled case, the court being of the opinion that it has jurisdiction to determine the matter of the fee of the said John N. Staples, and to order its payment out of the fund now in the hands of the said A. L. Brooks, and that the said fund is within the control of the court, and that the said Staples is entitled to be paid therefrom a just and reasonable sum as compensation for his services to the said Fisher in this case, and that the said sum of $33,053.15 was recovered by means of the services of the said John N. Staples, and that he has the right to have his compensation paid therefrom, and to that end the same has been held by the said A. L. Brooks, and that the services rendered by John N. Staples in recovering this fund are reasonably worth $7,500: It is therefore ordered, adjudged, and decreed that the said John N. Staples be allowed the further sum of $3,100 in full payment for his services rendered the said Fisher in this case; and the payment of $3,500 heretofore made by A. L. Brooks be, and the same is hereby, approved; and that the said A. L. Brooks pay into the registry of this court said sum of $3,100 for the use and benefit of said John N. Staples."

Charles M. Stedman and E. J. Justice (Stedman & Cooke and Justice & Broadhurst, on the brief), for appellants.

William P. Bynum, for appellee.

Before PRITCHARD, Circuit Judge, and WADDILL and DAYTON, District Judges.

PRITCHARD, Circuit Judge (after stating the facts as above). As appears from the statement of facts, on the 30th day of September, 1901, B. J. Fisher filed his pleadings in the United States Circuit Court in the action in which a receiver had been appointed, setting up a judgment of $25,000 which he had obtained in the state court, claiming enough of the fund in the custody of the court to satisfy such judgment before the trustees of the deeds of trust and the bondholders were entitled to receive anything; and this, by virtue of section 1255 of the Code of North Carolina, as will appear by the pleadings in that proceeding. His right to the fund claimed, or any part of it, was denied by the Guardian Trust & Deposit Company, the trustee in the first deed of trust. This suit was in effect a test case to determine this matter, both as to Fisher and the other judgment creditors, and the decision of that case governed the cases of the other judgment creditors; and the conduct of that case devolved entirely upon his attorneys of record, Messrs. Staples and Brooks.

An examination of the record will show that appellee and Mr. Brooks appeared as counsel for Mr. Fisher before Judges Simonton and Boyd, who heard the case. From the judgment rendered therein,

an appeal was taken to this court, and, when the question was argued here, appellee and Mr. Brooks appeared as counsel for Mr. Fisher and argued the different questions involved in the controversy. After argument was had before this court, the case was certified to the Supreme Court of the United States. There the appellee and Mr. Brooks again appeared as counsel for Mr. Fisher and succeeded in establishing the priority of the judgment which had been obtained in the state court.

From the time the Circuit Court of the United States assumed jurisdiction, the proceeding was purely of an equitable nature and was contested as such by appellee and Mr. Brooks as attorneys for Mr. Fisher; and, as a result of their services, it was finally decreed that Mr. Fisher was entitled to priority in that suit, and a decree was entered in his favor, by virtue of which the sum of $33,000 was adjudged to be due Mr. Fisher, and this amount was paid over to Mr. Brooks, who was, as we have said, associated as counsel with Mr. Staples.

The learned judge who heard this case below found as a fact that it was agreed between Messrs. Fisher and Staples that Mr. Staples was only to be paid a fee for his services in the event he should recover, and that his fee was to be paid out of any amount that might be recovered. It also appears, as is shown by the findings of fact, that the sum of $3,100 was to be held by Mr. Brooks to await the determination of the controversy between Mr. Staples and Mrs. Fisher (executrix of Fisher, who had died in the meantime), as to the amount of appellee's fee, and that out of said sum appellee was to be paid such amount as might be found to be due him for services rendered in that suit. Counsel for appellants insist that there was a final decree entered prior to the institution of this suit by which that case was taken from the docket. That decree, however, provided that a final report should be made, and in the event no exceptions thereto were filed, that the receiver should be discharged; but an examination of the record shows that no report has ever been filed by the receiver, and, therefore, the judgment has not become effective owing to the conditions contained therein. The court below found as a fact that the case is still pending on the docket at Greensboro, and this finding of fact, in our opinion, disposes of the question as to whether this court has jurisdiction.

It is also insisted that, inasmuch as the original amount of the judgment was paid over to Mrs. Fisher, the court thereby lost control over the fund and has, therefore, no power to make any order respecting the same. The court below found as a fact, based upon the petition and the answer filed by Mr. Brooks, together with his testimony, that, during his absence, his law partner, while acting under a misapprehension of the facts, did pay to Mrs. Fisher $20,000 of the fund which had been directed to be held by him subject to the determination of the controversy between the appellee and Mrs. Fisher. It is also shown and found as a fact that, as soon as Mr. Brooks returned, he repudiated the entire transaction, and, out of other funds in his possession as agent for the Fisher estate, placed the sum of $3,100 in the bank to his credit as solicitor to await the determination of the controversy between appellee and Mrs. Fisher; and this is the fund which is now being held

by Mr. Brooks subject to the orders of the court to await the determination of the question as to the amount that Mrs. Fisher, as executrix, is due to appellee, as attorney.

That the court had the custody and control of the fund acquired in this suit is admitted. Having thus acquired the custody of the same, it necessarily follows that it had jurisdiction to determine when it should be disbursed and to whom it properly belonged.

Under the terms of the contract between petitioner and his client, the petitioner was only entitled to compensation out of any amount that he might recover in that suit, and it was by his skill and ability that the judgment in question was recovered. We think that the court below very properly held that the appellee was entitled to be paid for his services out of the funds thus recovered.

Under the circumstances of this case, and in view of the findings of fact by the court below, we are of opinion that there is no error, and that the judgment complained of should be affirmed.

DAYTON, District Judge (dissenting). I very reluctantly dissent. I cannot reconcile myself to the conclusion that the court below had jurisdiction in the premises.

As I view this record, it is beyond all question that, by decree of July 18, 1901, the receiver's sale of the waterworks company's plant was confirmed, and all persons claiming "any right, title, or interest in or lien upon the property sold" were required to present their claims or demands within 60 days or be barred thereof; that by decree of September 3, 1901, this sale was again confirmed, and the $75,000 purchase money was directed to be substituted for the property, and all rights in, and claims upon, the property were to be transferred and held against such proceeds of sale; that on September 30, 1901, B. J. Fisher, by petitioner Staples and A. L. Brooks, his attorneys, filed his answer claiming his judgment to be a lien upon such fund prior to that of the bondholders by reason of its origin in tort and not in contract; that on March 24, 1902, decree was entered declaring the Fisher judgment and three others for this reason, in accord with a North Carolina statute, to be prior to the mortgage liens, and directing "that the receiver in this suit pay to B. J. Fisher or his attorneys of record" his judgment with its accrued interest; that by this decree and a subsequent one of January 9, 1907, the whole fund was directed to be disbursed by the receiver; that on March 15, 1907, the receiver filed his report showing all debts to have been paid and that a balance of $2,391.33 in his hands was due bondholders; that by decree of that day, declaring itself upon its face to be a final one, the receiver was directed to distribute this balance to the bondholders, and providing "that, unless exceptions are filed to the action of the receiver within 30 days next hereafter, he be discharged"; that no exceptions were filed within 30 days, and no reason whatever existed for retaining this cause, after the lapse of such 30 days, as all matters had been absolutely and finally disposed of, and the cause could have been so retained only by reason of the clerk's inadvertence and failure to strike it from the docket; that on February 16, 1909, nearly two years after the entry of this decree finally ending

the cause, Staples filed his petition seeking to assert an attorney's lien against the Fisher judgment that had been paid in full and without objection on his part to Brooks, his associate counsel, under decree entered nearly seven years before, and which, so far as Fisher was concerned, settled all his rights in the cause and in legal effect dismissed him therefrom. This petition sets up a private contract (wholly independent and·impertinent to any issue involved in the original controversy) between Staples, Fisher's administratrix, and Brooks, whereby, it is alleged, it was agreed that Brooks, who received the Fisher money from the court's receiver under the decree of March 24, 1902, should hold a sufficient sum thereout as stakeholder until the amount due Staples for his services to Fisher might be ascertained and determined, and it is alleged that, to accomplish this, an arbitration was provided for between Staples and Fisher's administratrix and actually had, the award having been made and, for defects, set aside by the state courts and further action under the agreement declined by Fisher's administratrix.

The basis of the majority opinion seems to be that the learned judge below filed a statement of "finding of fact" from which it appears that he ascertained as facts, among other things, that an agreement existed between Fisher in his lifetime and Staples that the latter should be paid for his services only out of the amount of recovery, that the cause was still pending and the fund still under the jurisdiction of the court, which "findings of fact" are deemed conclusive of Staples' right to recover.

With the utmost deference for the opinion of my Associates, it seems to me that this position is unsound for two reasons: First, because this "finding of fact," setting forth as it does many things aliunde the record, is not warranted in practice in an equity case as determined by this court in Hyams v. Federal Coal & Coke Co., 82 C. C. A. 324, 152 Fed. 970, where it is held that evidence cannot be adduced orally in open court upon hearing unless the parties consent to do so, but must be taken and filed in form of depositions, and this, too, notwithstanding Equity Rule 67, May 15, 1893 (149 U. S. 793). In this case it is clearly shown that the defendant administratrix of Fisher was objecting to any such finding of facts by the court; she having filed plea denying in toto the court's jurisdiction, and also having excepted on record to such finding. If, therefore, this rule of practice is to stand as fixed by this Hyams Case (the soundness of which I frankly say I have always doubted), the finding of facts from other sources than from the depositions filed is no longer warranted in equity as administered in this circuit.

But, second, aside from all this, it cannot be questioned that the orders and decrees in an equity cause must speak for themselves, and the interpretation of their scope and effect involves, not a question of fact, but is matter purely legal. The mere findings of the court below to the effect that the fund was still under its jurisdiction and the original cause was still pending can be held as nothing less and nothing more than its judicial construction of the decrees and orders entered in the cause, and we cannot avoid a review of this judicial act by call-

ing it a "finding of fact" on its part. The true question is: What was the legal effect of the decrees of March 24, 1902, declaring the Fisher judgment to be prior to the mortgage liens and directing its payment in full by the receiver to Fisher or his attorneys of record, and of March 15, 1907, ascertaining that the receiver had paid all the debts decreed, including, of course, this Fisher one, disbursing the balance in his hands to the stockholders, and directing his discharge unless exceptions be filed in thirty days? If these decrees or either of them were final ones, they could only be set aside, modified, or corrected, after the lapse of the terms when rendered, by bill of review or by appeal. Bronson v. Schulten, 104 U. S. 410, 26 L. Ed. 797; Klever v. Seawall, 12 C. C. A. 653, 65 Fed. 373.

What constitutes a final decree? In the determination of this question it is to be remembered that the test of the finality of a decree is not whether the cause remains in fieri, in some respects, in the court of chancery, awaiting further proceedings necessary to entitle the parties to the full measure of the rights it has been declared they have, but whether the decree which has been rendered ascertains and declares these rights. If these are ascertained and adjudged, the decree is final. Ex parte Norton, 108 U. S. 237, 2 Sup. Ct. 490, 27 L. Ed. 709; St. Louis, etc., R. R. Co. v. Southern Express Co., 108 U. S. 24, 2 Sup. Ct. 6, 27 L. Ed. 638; Grant v. Life Ins. Co., 106 U. S. 429, 1 Sup. Ct. 414, 27 L. Ed. 237; Forgay v. Conrad, 6 How. 201, 12 L. Ed. 404; Winthrop Iron Co. v. Meeker, 109 U. S. 180, 3 Sup. Ct. 111, 27 L. Ed. 898; Dainese v. Kendall, 119 U. S. 53, 7 Sup. Ct. 65, 30 L. Ed. 305; Lodge v. Twell, 135 U. S. 232, 10 Sup. Ct. 745, 34 L. Ed. 153.

And where a decree is made as to one of several defendants whose interests are not at all connected with that of the other defendants, such decree is final as to him, although the cause may be still pending in the court as to the rest. Royall's Adm'x v. Johnson, 1 Rand. (Va.) 421, 427; Bunnell v. Berlin Bridge Co., 66 Conn. 24, 33 Atl. 533, 536; Klever v. Seawall, 12 C. C. A. 653, 65 Fed. 373; Hill v. Chicago & E. R. Co., 140 U. S. 52, 11 Sup. Ct. 690, 35 L. Ed. 331; Forgay v. Conrad, 6 How. 201, 12 L. Ed. 404.

Under these authorities, and many others that could be cited, how is it possible upon mere inspection of the decree of March 24, 1902, for us to hold otherwise than that it was final as to Fisher and his interests in the cause? It distinctly determines the question in controversy, to wit, his alleged right of priority over the bondholders, in his favor, and decrees that the receiver "pay to B. J. Fisher, or his attorneys of record, the sum of $25,000 with interest thereon from the 14th day of January, 1901," thereby fixing the amount of his debt and directing immediate payment thereof without qualification or limitation. Nothing remained for the court to do thereafter. The execution of the decree only required the ministerial act of the receiver of paying over the money. Will it be contended for a moment that the bondholders could have waited seven years and then appealed from this adjudication in Fisher's favor because the cause was still on the docket and the receiver had not reported his payment over of the money or a portion of it finally to them?

But we must not forget that still another decree was entered based upon the receiver's payment of this debt and others as directed which ascertained the balance in his hands, directed its distribution to stockholders and his final discharge if exceptions were not filed. And this decree was entered one year and eleven months before Staples filed his petition. How can this decree, unappealed from, be held under the law as other than final as to all parties and all matters involved in the cause? Are we to hold that the mere default of the receiver to report his ministerial acts of disbursement of the small balance due to stockholders is sufficient for us to assert control over the Fisher fund, decreed near seven years before to be paid, and which Staples charges in his petition was actually paid on April 14, 1906, near three years before we are asked by this petition to do so? I cannot think so. If Staples had desired, it seems to me, to assert his attorney's lien against the fund, he would have realized the necessity of doing so before the decree of March 24, 1902, at which time the court below could have ascertained its amount and directed its payment. He did not do this; but, on the contrary, his petition expressly shows that he entered into and relied upon a new contract constituting a new and different tribunal than this court—that is to say, an arbitration board—to ascertain and determine his rights.

Strictly speaking, no attorney's lien attaches to any fund which is within the custody or control of the court; but it is the court's right to award attorney's fees out of the fund. But this power to award fees is impersonal, acting on the res alone, so, where the res is beyond the control of the court, the attorney must seek some other remedy. Fowler v. Lewis, 36 W. Va. 112, 14 S. E. 447; Dubois' Appeal, 38 Pa. 231, 80 Am. Dec. 478; Mordecai v. Devereux, 74 N. C. 673; U. S. v. Boyd (C. C.) 79 Fed. 858; Penn'a Finance Co. v. Charleston, etc., R. Co. (C. C.) 46 Fed. 426; Weigand v. Alliance Supply Co., 44 W. Va. 133, 28 S. E. 803; Tuttle v. Claflin (C. C.) 86 Fed. 964; Rumsey v. People's R. Co., 84 Mo. App. 508; Rawlings v. New Memphis Gaslight Co., 105 Tenn. 268, 60 S. W. 206, 80 Am. St. Rep. 880; 4 Cyc. 1013, and notes.

Here it seems to me that both the res is beyond the control of the court, with the full knowledge and assent of Staples (he having filed as attorney his client's petition and having secured thereon the decree disbursing it), and that he has already sought another remedy, to wit, an independent contract between himself, his associate attorney Brooks, and his client's personal representative. That the latter refuses to comply with this contract may be his misfortune and may disclose moral turpitude on her part, yet his right to enforce its performance would seem to be clear, provided he attempts to do so in a court of competent jurisdiction. That the court below was not such court is clear because the parties to such contract are all citizens of the same state. My conclusions therefore are:

First. That the court below had no jurisdiction to entertain this petition of Staples, as being filed in and as a part of the record in the original cause, because by the decree of March 24, 1902, all the rights of his client Fisher were finally determined and decreed, and by the

decree of March 15, 1907, the cause was finally ended, and the fact that it was allowed to remain on the docket was due solely to the ministerial omission of the clerk in not striking it therefrom.

Second. That if this were not so the power of the court below to ascertain, fix, and decree any attorney's fee claimed by Staples against the Fisher fund was limited and existed only so long as the fund remained under its control. Therefore when Staples suffered the decree of March 24, 1902, to be entered, directing payment in full to Fisher or to his attorneys without setting up his demand, subsequently entered into the independent agreement with Fisher's administratrix and Brooks his associate counsel as to the manner in which his fee should be ascertained and paid, and, in accord with this agreement, allowed Brooks to collect the fund, he waived all right to assert his claim in the original cause, and must be held to have elected to look to the enforcement of his rights to compensation to this new and independent contract. For the law touching such waiver, see 4 Cyc. 1011 and 1012, and notes 75, 76, and 77, and authorities therein cited.

Third. That the court below had no jurisdiction to entertain Staple's petition as an independent and original proceeding to enforce the contract between himself, Brooks, and Fisher's administratrix, based upon the allegation that Fisher's administratrix had violated it because the sole parties in such a controversy would be the three named, all of whom are citizens of North Carolina.

Fourth. That the right of Staples to appeal to a local court of competent jurisdiction to enforce this agreement, if he can, is clear and undeniable.

The decree of the court below, therefore, in my judgment, ought to be reversed, and the petition dismissed solely for want of jurisdiction and without prejudice to any action Staples may see fit to institute in any court of competent jurisdiction to enforce such contract.