McINTOSH v. WARD et al.

(Circuit Court of Appeals, Seventh Circuit. November 15, 1907.)

No. 1,340.

1. APPEAL—DECISIONS REVIEWABLE—QUESTION OF COSTS.

Where, in a suit for the dissolution of a partnership and an accounting, appellant assailed only those parts of the decree which directed the items for pay roll expended by the receiver, and the receiver's compensation to be taxed as costs and included in a personal judgment against appellant, the record presented the reviewable inquiry whether such items were taxable costs as between the parties, and was not objectionable under the rule that an appeal involving a mere matter of costs will not lie.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error, §§ 823–839.]

2. RECEIVERS—ERRONEOUS APPOINTMENT—EXPENSES—PAYMENT.

Where the appointment of a receiver is determined to be void, or when the fund proves insufficient, the court in the exercise of its equity powers may compel the party who procured the receiver to be appointed to pay into court a sum sufficient to meet the expenses of the receivership.

**3.** PARTNERSHIP—ACCOUNTING—COSTS.

The discretion of a court of equity in a suit for a partnership accounting in which a receiver was appointed did not authorize an order requiring the defendant and the sureties on his cost bond to pay to complainant, under the name of costs, items paid from partnership assets for services and expenses in administering the fund, nor any other items not within the fee-bill act [Rev. St. §§ 823, 983], providing what shall be included as costs in and form a portion of a judgment or decree against the losing party.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Partnership, § 820.]

**4.** SAME—FRAUD.

Where a bill for a partnership accounting charged defendant with fraud and misconduct, defendant was answerable in that proceeding for all damages sustained by plaintiff on account of defendant's breaches of duty to the firm.

**5.** SAME—JUDGMENT.

Where a bill for a partnership accounting charged defendant with fraud and misconduct under which bill a receiver was appointed, who continued the firm's business, all the breaches of duty for which defendant was liable up to the appointment of the receiver were merged in a decree of dissolution in favor of plaintiff, and hence the court could not allow further damages for such wrongs by adding to the account as against defendant the amount the receiver had expended from the partnership fund for conserving and carrying on the partnership business.

Appeal from the Circuit Court of the United States for the District of Indiana.

Appellees' decedent, Benton, began this suit to dissolve a partnership between himself and appellant McIntosh, and to have a full accounting. The bill charged that McIntosh had wrongfully applied partnership funds to his individual use, had imperiled the funds in rash speculations, had mismanaged the business, and in other respects had been guilty of misconduct and fraud. The property consisted mainly of leases of coal mines in Indiana, machinery and tools. On Benton's motion the Circuit Court on the 29th of November, 1899, appointed a receiver to take possession of the assets and to continue the business by operating the mines, marketing the product, etc. McIntosh denied Benton's charges, averred that the balance was in his favor, and prayed that a full accounting be had. On the pleadings, evidence, and master's report, the court adjudged on July 18, 1903, that the averments of the bill were true; that on November 29, 1899 (the day on which the court through its receiver took charge of the property and business of the partnership), the firm owed Benton $80,376.32, and McIntosh owed the firm $34,651.63: that to equalize accounts McIntosh should pay to Benton $57,513.93, with interest thereon from November 29, 1899, $12,557 21; that until the accounts were equalized by such payment McIntosh should not be entitled to any share in the assets, and Benton should have a lien thereon and be paid therefrom; that if the accounts were not eventually equalized either by payments from McIntosh or by the liquidation Benton should have a deficiency judgment against McIntosh; that all taxable costs should be assessed against McIntosh; that the remaining assets should be sold in a lump, and the proceeds applied first to the payment of the taxable costs and the expenses and liabilities of the receivership, second, to claims of creditors, and, third, to the discharge of Benton's lien; and that any balance should be divided equally. All questions not disposed of in that decree the court reserved for further adjudication.

The assets were sold for $2,000. In the decree appealed from, entered on April 7, 1906, the court found that the $2,000 proceeds of sale should be paid to certain creditors, but that the payment could not then be made because $1,809 of those proceeds had been applied by the receiver "to the proper costs of litigation." McIntosh was ordered to pay $1,809 into court so that the

$2,000 might go to the creditors in question. The claims of those creditors were based on loans made to the receiver to enable the receiver to meet pay rolls during his operation of the mines. These payments for labor in the mines were held to be expenses of the receivership, and were adjudged to be "costs of administration in this suit." During his conduct of the business the receiver had taken from the assets of the firm for compensation for his services $13,005.81. His action in this respect was approved by the court, and his compensation was adjudged to be "costs of litigation." The court decreed that the foregoing items of "costs of administration" and "costs of litigation" should be taxed against McIntosh, and the clerk was ordered so to tax them. It appearing that Benton would get nothing from the assets, and that McIntosh had made no payment toward equalizing the accounts, the court awarded Benton a personal judgment against McIntosh for $95,966.05 as being the sum of the following separately stated items:

Amount due Nov. 29, 1899............................................$57,513 97
Interest thereon from Nov. 29, 1899, to July 18, 1903.............. 12,557 21
Interest from July 18, 1903, to April 7, 1906....................' 9,373 39
One-half of firm debts paid by Benton since July 18, 1903.......... 1,515 67
"Costs of administration" paid as aforesaid from assets of the firm  2,000 00
"Costs of litigation" similarly paid............................... 13,005 81

And, finally, the court reserved the right to make such further orders and decrees in the cause as might be necessary to secure the benefits of the present decree to the parties entitled thereto "either against the defendant McIntosh or the obligor or surety upon the bond or undertaking for costs heretofore filed by said defendant."

On this appeal McIntosh assails only those parts of the decree which declare the items for pay roll and receiver's compensation to be taxable costs and include them in the personal judgment against him.

R. O. Hawkins, for appellant.

John E. Scott, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). Appellees insist that nothing is involved but a matter of costs, and therefore that the appeal will not lie. The assertion quite evidently begs the question. The record presents the reviewable inquiry whether certain items that are embodied in the final judgment against appellant are or are not taxable costs as between the parties.

By the ancient common law items of expense in the conduct of litigation, paid or incurred by one party, were not allowable in the judgment against the other. Such allowances were of statutory origin. Our statute of 1853 (sections 823 and 983, Rev. St. [U. S. Comp. St. 1901, pp. 632, 706]) provides what shall, as costs, "be included in and form a portion of a judgment or decree against the losing party." And in Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157, it was said that costs as between party and party are confined to the matters allowed by the fee-bill act. The challenged items are not within the statute; but appellees claim that the Circuit Court as a court of equity had power to include them in the judgment as costs. Though at law the losing party is adjudged to pay to his adversary the latter's taxable costs laid out and expended in the litigation, in equity the chancellor has a broad discretion respecting the allowance and apportionment of such costs between the parties. Courts of equity also have a wide discretion in making and controlling allowances from the fund

for services and expenses in conserving and administering a fund that has been brought into court. And when the appointment of a receiver is determined to be void, or when the fund proves insufficient, it has been held that a court in the exercise of its equity powers may compel the party who procured the receiver to be appointed to pay into court a sum sufficient to meet the expenses of the receivership. Gluck & Becker on Receivers (2d Ed.) pp. 540, 541; Smith on Receivers, pp. 587, 588; Beach on Receivers (2d Ed.) §§ 773, 774. But, in our opinion, the discretion of a court of equity does not authorize it to require one party (and the sureties on his cost bond) to pay to the other, under the name of costs, items paid from the fund for services and expenses in administering a fund properly in court, nor any other items not within the fee-bill act.

A theory is advanced that, though there be no liability on the cost bond, a final adjustment of the equities of the case warranted the inclusion of the disputed items. The theory is that because the suit and the receivership were made necessary by appellant's wrongful and fraudulent conduct, because appellees had a lien upon the assets for the equalization of the partners' accounts, and because the fund was not sufficient for that purpose and had been reduced by the allowances for the receiver's compensation and expenses, therefore appellees were entitled to judgment against appellant for the amounts so taken from the fund. All the equities between the parties from the beginning of the partnership down to November 29, 1899, when the receiver was appointed, were determined and adjusted in the accounting. The bill charged appellant with fraud and misconduct. For damages on account of all breaches of duty to the firm he was answerable in the accounting. Bates on Partnership, § 780; Lindley on Partnership (2d Ed.) p. 305 et seq. Under the first decree (which in this respect has now become conclusive on both parties) all appellant's wrongs and frauds upon the firm were merged in the account as stated. After November 29, 1899, the business was in the hands of the court. No injury to assets or business by appellant after that date was claimed. For depreciation under the receiver's care and management appellant was not responsible. So the court could not, on any principle of law or equity, give to appellees further damages for the merged wrongs and frauds by adding to the account the amount the court had been expending from the partnership fund for conserving and carrying on the partnership business.

In the respects complained of, the decree must be reversed at appellees' costs, and the cause remanded to the Circuit Court.

Reversed.