LINEN THREAD CO. et al. v. A. BOOTH & CO.

ROBBINS v. CHALMERS et al.

(Circuit Court of Appeals, Seventh Circuit. January 3, 1911. Re-hearing Denied July 27, 1911.)

No. 1,727.

RECEIVERS (§ 154*)—ATTORNEYS' FEES—PROPRIETY OF ALLOWANCE.

Counsel fees for services in facilitating reorganization of a corporation were properly disallowed as a charge against the funds of receivership against the corporation, where the amount stipulated for such service was paid by the corporation, regardless of the adequacy of such compensation.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 279–282; Dec. Dig. § 154.*]

Appeal from the Circuit Court of the United States for the Northern District of Illinois, Eastern Division.

Bill by the Linen Thread Company and another against A. Booth & Company. From a decree dismissing Henry S. Robbins' petition for an allowance of counsel fees, he appeals adversely to William J. Chalmers, Receiver, and others. Affirmed.

This appeal is from a decree in the principal case, dismissing for want of equity the appellant's petition for allowance of counsel fees out of the estate in the custody of the court. The services in question are described in the appellant's brief, as directed "to facilitate the reorganization of the corporation of A. Booth & Co., whereby its assets and good will have been vested in a new corporation known as the Booth Fisheries Company," and such facts as appear essential for the purpose of review are mentioned in the ensuing opinion.

Martin H. Foss, for appellant.

John Barton Payne, Silas H. Strawn, Ralph M. Shaw, Max H. Whitney (Herrick, Allen & Martin, of counsel), for appellees.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The single question presented by the appeal from the decree of the Circuit Court is this: Were the services of the appellant, as described in the evidence, an equitable charge against the funds of the receivership? No issue arises upon the value of such services, nor in reference to material facts, and the testimony is ample for a large allowance, if thus chargeable to the estate as an expense of administration.

In August, 1908, A. Booth & Co.—a corporation greatly extended in properties and business, with numerous branches in various parts of the country, and main location at Chicago—was indebted upon short-time notes in excess of $5,000,000, and threatened with insolvency. The president, W. V. Booth, employed the appellant to advise the officers as to the course to be adopted, their regular counsel being abroad; and he became satisfied that a receivership was needful, prepared the creditors' bill to that end, and made all the arrangements for its prosecution, including numerous conferences with the

banks and other leading creditors. On September 10, 1908, the bill was filed in the Circuit Court, and W. J. Chalmers was appointed receiver thereunder, pursuant to his arrangement; and the appellant attended as well to the preparation and filing of ancillary bills and appointments of ancillary receivers in about 20 other jurisdictions, wherein plants and property were located. The work was arduous, with attachments and other controversies arising in various places, and the time and skill of the appellant and his office force were largely taken up therewith, for some time, with concurrence on the part of the general attorneys employed by the receiver and counsel representing the creditors. It is conceded, however, that he entered upon and conducted this service under his employment by W. V. Booth and the corporation, and was the special representative of Mr. Booth and other stockholders, not only therein, but throughout his entire service, to accomplish reorganization in the interest of such stockholders; and that both receiver and creditors were invariably represented by other counsel respectively, as were complainants in the bill.

The important services thus outlined to carry out the purposes of the creditors' bill—laying out of consideration, for the moment, the claim as made and defined in the appellant's brief, for "counsel fees out of the estate in the hands of the receiver appointed by the Circuit Court to facilitate the reorganization of the corporation"—would appear to furnish ground for a claim of equitable allowance, were compensation therefor not provided and paid by the corporation. We beieve, however, that no allowance for such services is authorized from the present funds, if otherwise sanctionable, for the reason that an amount stipulated therefor was advanced and paid by the corporation. The evidence is undisputed that thorough investigation had shown the magnitude of the undertaking, and the plan of procedure was both settled and concurred in by counsel for the banks and larger creditors, with the bills prepared for filing, when the appellant requested and received the payment referred to. He suggested payment of $5,000 for his services and incidental expenses; but the amount was increased, upon conference with counsel for the creditors' committee, to $10,000 (ratified by the committee), and that sum was paid over from the corporate funds. The testimony is decisive, as we believe, that this payment covered the services above mentioned, all plainly rendered under such arrangement. Indeed, the appellant's letter in evidence (subsequently addressed to the receiver in reference thereto) shows such understanding, as we interpret the terms, namely, that he was paid "$7,500 on account of services rendered and to be rendered," and $2,500 "held for making advances" for disbursements, whereof $1,293.86 had then been expended. For services of local attorneys, engaged in ancillary proceedings and attachments, bills were allowed and paid by the receiver, as administration expenses.

We are of opinion, therefore, that no error appears in the decree for disallowance of further claim out of the fund for such servccs, and that inquiry was not open, whether the amount so paid and accepted was adequate or inadequate compensation therefor.

The appellant, however, performed further services up to January or February, 1908, in efforts to reach a settlement between the

various interests in controversy, through plans of reorganization which were framed by him, and his petition for allowance is predicated on the service throughout in that aspect. It is contended, in substance, that his advice and services "created the receiverships" and prevented bankruptcy adjudication, preserving the great properties so that reorganization could be effected; that his legal services have thus "benefited others having a common interest" and are "entitled to reimbursement out of the fund itself, or by proportional contribution from those who accept the benefit of the fund." In support of the claim counsel cites Meddeaugh v. Wilson, 151 U. S. 333, 341, 14 Sup. Ct. 356, 38 L. Ed. 183; Trustees v. Greenough, 105 U. S. 527, 532, 26 L. Ed. 1157; Central R. R., etc., v. Pettus, 113 U. S. 116, 122, 5 Sup. Ct. 387, 28 L. Ed. 915; Harrison v. Perea, 168 U. S. 311, 318, 18 Sup. Ct. 129, 42 L. Ed. 478. We believe the testimony establishes no case for such allowance under the authorities referred to, nor within the doctrine applicable to the controversy.

Whatever may be the general rule in reference to legal services in producing the custodia legis out of which settlement was effected is beside the inquiry under the foregoing view as to their payment. The remaining services to effect reorganization, however valuable and persistent in the interest of the appellant's clients, were rendered under their special employment—namely, for W. V. Booth and other stockholders allied in interest—to reach an arrangement with creditors and other adverse parties which would best promote the interests of such stockholders; and it is not needful to detail the difficulties which stood in the way of favorable settlement. His plans of reorganization were rejected by the creditors, who ultimately obtained, under independent negotiations with other interests, much better shares in the assets than proposed by the appellant. In the light of these conceded facts, we believe compensation from the estate to be unauthorized, and that it is immaterial in what measure the appellant's work contributed to the final adjustment.

The decree of the Circuit Court, accordingly, is affirmed.

For cause which appeared after the submission of this appeal, GROSSCUP, Circuit Judge, took no part in the decision.