GUARANTY TRUST CO. OF NEW YORK v. CHICAGO RYS. CO. et al.

DAVIES et al. v. SAME et al.

(Circuit Court of Appeals, Seventh Circuit. January 10, 1911.)

Nos. 1,636, 1,637.

RECEIVERS (§ 154*)—COMPENSATION OF ATTORNEYS—RIGHT TO PAYMENT FROM FUND IN COURT.

Where petitioners as counsel for the complainant brought suits against certain street railroad companies, and, after the appointment of receivers for the companies, acted for the receivers with other counsel, but without any definite contract of employment, a letter written by the presiding judge to the receivers and by them shown to petitioners in which the receivers were advised that certain persons named were their only standing counsel, and that others should be employed only after consultation with the court, was a sufficient discharge of petitioners from the service of the receivers, and further services rendered by them in the litigation must be deemed to have been on behalf of the complainant, especially where the protection of its interests required such services, and neither complainant nor petitioners were entitled to be compensated therefor from the receivership funds, which in the main such services did not tend to augment.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 279–282; Dec. Dig. § 154.*]

Appeals from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

Suits in equity by the Guaranty Trust Company of New York against the Chicago Union Traction Company and others; same against North Chicago Street Railroad Company and others; and same against West Chicago Street Railroad Company and others. Petitions by complainant and by Julien T. Davies, Charles Francis Stone, Joseph S. Auerbach, Richard W. Stevenson, and others against the Chicago Railways Company, George W. Wickersham, Louis C. Krauthoff, and John C. Hately, as purchasing committee, and others, for the allowance of counsel fees. From orders denying the same, petitioners appeal. Affirmed.

On May 19, 1908, the Guaranty Trust Company of New York filed its petition in each of the following named causes in the Circuit Court: Guaranty Trust Company of New York v. Chicago Union Traction Company et al., No. 26,727; Guaranty Trust Company of New York v. North Chicago Street Railroad Company et al., No. 26,728, and Guaranty Trust Company of New York v. West Chicago Street Railroad Company et al., No. 26,729 (158 Fed. 913), asking that an allowance be made to it out of the proceeds of the sale of the assets of the said three street railroad companies, respectively, of the amount of its costs, expenses, and counsel fees, especially the fees of Messrs. Davies, Stone, and Auerbach, and John G. Johnson, by the petitioner incurred

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in the conduct of the above-named original suits brought by the petitioner against the said three street railway companies in the United States Circuit Court for the Northern District of Illinois on April 22, 1903, and the several amended and supplemental bills filed therein and incident thereto. To these petitions the receiver of the three companies made answer on June 29, 1908, denying any liability, and praying that the same be dismissed, with costs. On January 26, 1909, Messrs. Davies, Stone, and Auerbach and others, all some time members of the firm of Davies, Stone & Auerbach, during the pendency of said cause, also filed in said suits as consolidated, their joint petition praying for the allowance, in addition to what had already been allowed, of fees and expenses arising out of their connection with said three causes, being the same fees and expenses named in the Guaranty Trust Company's petition, aggregating something over $192,000. To which petition the receiver filed a like answer to that filed in the case of the Guaranty Trust Company.

By the order of the Circuit Court entered January 31, 1908, all matters covering allowances for counsel fees and expenses, receiver's fees, and the like were referred to the master to take proofs and report his conclusions thereon. The master on July 10, 1908, filed his report, in which he made recommendations covering the said claims of the attorneys on bills presented to him, in formal support of which said attorneys subsequently filed their said petition, so that both the said petitions of said Guaranty Trust Company and that of said attorneys were before him for disposition. In his said report the master found that there was no employment of said counsel by the receivers after March 10, 1904, at which time their further connection with the case as counsel for the receivers was terminated by direction of the court; that, while they rendered valuable services thereafter, such services were rendered to their own client, the Guaranty Trust Company, whose success in the collection of its judgment was depending on the issue of the pending litigation and that such services were merely of an advisory character, and that "the progress of that litigation which involved the realization of the funds which they are now resorting to for their compensation for services claimed to have been rendered to the receivers was not promoted by the action of complainant's counsel, and not in harmony with the foreclosure proceedings."

The master, however, reports that for services of said counsel rendered to the receivers between April 23, 1903, and March 10, 1904, the petitioners were entitled to the sum of $30,000 in addition to the sum of $35,000 fees and $9,931 expenses theretofore paid them. On exceptions filed by each of the parties to said report, such proceedings were had that the Circuit Court found that petitioners had no further claims against the receiver, and on March 26, 1909, disallowed said item of $30,000 awarded by the master against the receiver, and directed that the sum of $30,000 be paid to said Davies, Stone & Auerbach for their services as solicitors and counsel for the Guaranty Trust Company in connection with the filing of the original bill and the amended and supplemental bills in said causes and bringing the assets administered in these causes in to the court for administration and conservation by the court through its receivers, the payment to be made equally out of the funds realized on the sale under foreclosure of the assets of the three companies respectively, and in all other respects confirmed the report of the master. From this decree of the Circuit Court the said petitioner, the Guaranty Trust Company, has taken an appeal to this court assigning 60 grounds of error, which may be grouped under the following, viz.:

(1) That the Circuit Court held the Guaranty Trust Company was not entitled to be compensated or indemnified out of the funds in court for the fees and expenses of its counsel in said causes, respectively, except to the extent the same were incurred in connection with the filing of the several original amended and supplemental bills, and in bringing the assets into court for administration and conservation.

(2) That the court disallowed each and every claim for services and disbursements of its solicitors subsequent to March 10, 1904.

(3) That the court confirmed the finding of the master that the claims against the said several companies were not all of the same class, and that solicitors' services rendered were in favor of the Guaranty Trust Company, and did not produce a fund which would permit a charge upon it in behalf of

the Trust Company, and that the Guaranty Trust Company's equity is limited to what was thereafter actually added to the fund.

(4) That the court found the obligations for services and expenses claimed by the trust company were incurred for the trust company exclusively.

' (5) That the court confirmed so much of the master's report as finds that the indebtedness of the said several companies to complainant has been fully paid.

(6) That the court overruled the several exceptions to the action of the master in excluding certain questions and proofs tending to show that other counsel had received pay from the receivers in said several cases for services rendered the receivers of a character similar to those of Davies, Stone & Auerbach, and other claimants herein.

The said individual petitioners also took an appeal from said decree of March 26, 1909, to this court, assigning 42 grounds of error, which may be summarized as follows, viz.:

That in and by said decree entered in said several causes—

(1) The court refused to determine the amount of petitioner's and others' fees and disbursements as against the interest of complainant the Guaranty Trust Company, and others charged with the burden of said litigation in the funds realized in said several causes.

(2) The court held that Davies, Stone & Auerbach and their associate counsel, petitioners, were not entitled to be paid out of funds in court for any services and expenses incurred after March 10, 1904.

(3) That the court refused to hold that petitioners were entitled to be compensated in like manner as other solicitors employed in said causes.

(4) The court refused to hold that the arrangement by the Guaranty Trust Company of its interest in the funds arising from the sales of the assets of said several companies was made subject to the payment therefrom of the fees and disbursements of petitioners.

(5) That the court held that Judge Grosscup's letter of March 10, 1904, designated, or had the effect of designating, Mr. Miller and Mr. Gurley as sole counsel for the receivers as to matters then pending, and that whatever services petitioners rendered thereafter were simply advisory and on behalf of their own client, the complainant.

(6) That the court confirmed the master's report, finding that there was after March 10, 1904, no contract for services between petitioners and the receivers, and no demand by petitioners for payment of fees for services rendered to receivers, nor notice to the court of their claim that they were connected with said litigation as counsel for the receiver.

(7) That the court approved the payment of fees to other counsel rendering like services.

(8) That the court sustained the exceptions of the receivers to so much of the master's report as finds that petitioner's services to the receivers prior to March 10, 1904, were of the value of $65,000.

Petitioners also claim the benefit of all the assignments of error of the complainant, the Guaranty Trust Company.

Since the hearing the petitioners, the Guaranty Trust Company and Davies, Stone & Auerbach have filed their acceptance of the sum of $35,000 paid to the latter in full for services rendered to the receivers up to March 10, 1904, and the said allowance of $30,000, in full of services rendered by Davies, Stone & Auerbach to the Guaranty Trust Company in filing the original bills, and amended and supplemental bills herein, and bringing the assets into the court for administration and conservation.

In No. 1,636:

John C. Spooner and Julien T. Davies, for appellant.
W. W. Gurley and Henry S. Robbins, for appellees.

In No. 1,637:

John C. Spooner and John Barton Payne, for appellants.
W. W. Gurley and Henry S. Robbins, for appellees.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). The substance of the contention of the several petitioners is that complainant's counsel rendered valuable services to the receivers subsequently to March 10, 1904, for which they are equitably and lawfully entitled to compensation.

There is no question but that they performed faithful and extensive service in the course of the litigation growing out of the three suits brought by them as counsel for the Guaranty Trust Company of New York, after said date. The only question is whether these services were performed for the receivers or for their own client, the Guaranty Trust Company. It is conceded that up to March 10, 1904, they were in the service of the receivers. The burden is upon the receivers to show that such services terminated on that date. It does not appear that there was any change at that date in the character of their work in relation to these cases. The main ground upon which respondents rest is found in the fact that on March 10, 1908, the Circuit Judge, before whom the causes were heard, wrote to the receivers a letter instructing them to make certain disbursements, including the sum of $35,000 on account of fees and $5,000 on account of disbursements to the petitioners Davies, Stone & Auerbach, and concluding:

"Since the reorganization of the receivership the only standing counsel of the receivers are Mr. Miller and Mr. Gurley. Other counsel may be employed from time to time as the exigencies of the matter require, but only after conference with the court."

This letter was forthwith shown to the petitioners Davies, Stone & Auerbach.

It does not appear that petitioning counsel had any connection with said litigation other than that growing out of the fact of their being solicitors for the Guaranty Trust Company in instituting the proceedings. There was no special retainer. They were up to March 10, 1904, engaged as general counsel by the receivers along with several others, under the order of the court permitting the receivers to employ counsel. On that date the court, finding the multitude of counsel both unnecessary and burdensome to the estate in litigation, undertook, by the letter just quoted, to limit the number of general counsel, and provide for the employment of counsel in special cases. There is no claim that the receivers thereafter obtained leave of court to retain the services of petitioners in terms in any capacity. So far as the record discloses, the receivers took no other steps than to show the letter to the petitioner. The latter insist: (1) That the letter was not tantamount to an order of court, and could not be given that effect as against the contract of retainer entered into under order of court at about the time the suits were brought. (2) That, even if it could be so construed, it referred to litigation thereafter arising and not to matters then being litigated. As to the first point, the receivers could have dispensed with the services of petitioners at any time. It required no order of court. It is as if the receivers and the court had said to the petitioners:

"We shall no longer require your services as general counsel, and you may consider your retainer terminated as of this date."

Whether petitioners fully comprehended the significance of the notification seems doubtful from the fact that their course of action with relation to the litigation does not seem to have been in any way modified thereby. Relying, perhaps, upon their construction secondly above noted, they may have felt that the future would take care of itself. But we can see no justification for the limitations which they seek to place upon the definite language of the letter. They were notified that they were no longer to act as general counsel, and they never had been nor were then specially retained. They were clearly advised that they would not be further employed except upon application to the court. This provision they never availed themselves of. That throughout so long a period of intense litigation incidents should have arisen, and remarks be made by one or more of the receivers, being laymen, which might seem to indicate a disposition on the part of some of the receivers to modify the absoluteness of the order of discharge, is not surprising or of moment. Petitioners' own client was greatly interested, sufficiently so to account for their lively interest in and attention to the protracted litigation. Therefore there can be no ground for claiming that their activity should have put the court or receivers upon notice that they supposed themselves to be in the receivers' employment. Indeed, at the time of the filing of the said original bill, complainants represented only unsecured creditors, whose only chance of payment was in the success of reorganization. There seems to have been no step taken which did not vitally affect petitioner's clients. Their rights must be satisfied from the equities in the several companies which at the time suits were instituted were of the most unpromising character. Their client's interests were such that they could not have done less, even though they had never been retained by the receivers. It is apparent from the record that much of the litigation arose out of the petitioner's purpose to protect that part of the properties in suit from which their clients must be paid, such as the relative rights of these companies, and other questions which did not directly affect the fund in court.

There would seem to be no good reason why other parties representing much larger interests should contribute to the fees of counsel seeking to obtain, without prejudice, it is true, to the larger interests, an advantage for the unsecured creditors. Then, too, it appears from the record that petitioners were particularly active, as they should have been, in caring for the rights of the unsecured creditors in the matter of reorganization, calling upon the receivers for an accounting with that in view, and opposing several plans for reorganization to that end. If other evidence of their loyalty to their unsecured clients be wanting, it is found in their threat to dismiss the original suits as to necessary parties unless their clients' judgments were paid in full, a proceeding which was inimical to the interests of the other parties to the proceedings. It is not perceived how petitioner could, in view of the delicate character of professional ethics, have unqualifiedly sustained the rights of others than the unsecured creditors, as well as those of the latter, in many phases of the legal proceedings set out in the record. "As a general rule, the practice in equity does not sanc-

tion the employment by a receiver of the solicitors of any of the parties in the suit, or one whose interests may be opposed to those of the parties, since such solicitors are bound to watch the proceedings of the receiver in the interest of their clients and the undertaking to act for the receiver at the same time might impose upon them inconsistent and conflicting duties." 34 Cyc. 291.

The court below found the services rendered to the receivers up to March 10, 1904, to be of value, and made allowance therefor which was accepted in full. Under the facts in the record covering the period subsequent to that date, such an allowance could not have been properly made. Clients are entitled to a whole-hearted service. In the main, even what might have been deemed useful service failed to result in benefit to the funds in court. Some authorities, as, for instance, Heffron v. Flower, 35 Ill. App. 200; Farwell v. Great Western Telegraph Co., 161 Ill. 522, 44 N. E. 891, and MacDonald v. Wagner, 5 Mo. App. 56, hold that in no case can counsel be allowed for fees while acting for one of the parties and the receivers at the same time. Such, however, is not the rule in the federal courts, but, where a conflict of interests is thus attempted to be represented, the courts will assuredly not presume any obligation on the part of the receivers to pay counsel fees, especially when they are themselves fully represented by counsel, and in face of a state of facts such as appear here. Certainly no acquiescence can be assumed. For the reasons above stated, we find no basis for allowing petitioner's fees on the ground of an equitable lien. There was not such a service to the fund as would invoke this rule. The Circuit Court seems to have conceded to petitioner the full limit of this principle in the allowances made, and its action in the premises went quite as far as was justifiable under the doctrine of Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157, Central R. R. Co. v. Pettus, 113 U. S. 116, 5 Sup. Ct. 387, 28 L. Ed. 915, and Harrison v. Perea, 168 U. S. 311, 18 Sup. Ct. 129, 42 L. Ed. 478, as applied to reorganizations of insolvent corporations in Central Trust Company v. Condon, 67 Fed. 84, 14 C. C. A. 314, and Burden v. Ferris Mfg. Company, 87 Fed. 810, 31 C. C. A. 233.

It seems too self-evident to require further argument that the several parties in interest in said fund did not have a common interest in the results sought to be obtained by the greater part of the litigation for which payment is now asked. In the judgment of this court petitioners have been given ample allowance for all their efforts calculated to confer benefit upon the parties to the case, other than the unsecured creditors.

In further support of the foregoing conclusions, reference is made to the opinion of this court rendered at this term of the court in the case of Linen Thread Company et al. v. A. Booth & Co., No. 1,727, 192 Fed. 515. It is not deemed necessary to pass upon exceptions other than those above considered.

The decree of the Circuit Court is affirmed.