BUELL v. KANAWHA LUMBER CORPORATION.   Ex parte WILLCOX
& WILLCOX.   Ex parte McCULLOUGH.

(District Court, E. D. South Carolina.   December 31, 1912.)

1. ATTORNEY AND CLIENT (§ 155*)—FEES OF ATTORNEY—ALLOWANCE FROM
   FUND IN COURT—PRINCIPLES GOVERNING.
   The general equitable principle on which American courts act in allowing counsel fees from a fund in court for distribution is that where one has gone into a court of equity, and, taking the risk of litigation on himself, has created or preserved or protected a fund in which others are entitled to share, such others will be required to contribute their share to the reasonable costs and expenses of the litigation, including reasonable fees to complainant's counsel; but, to warrant such allowance, the fund so created or preserved must be one applicable to the claims of the complainant and those interested with him, and a fund on which others have liens superior to complainant's claim cannot be subjected to such payments to the displacement of such liens.
   [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 316; Dec. Dig. § 155.*]

2. ATTORNEY AND CLIENT (§ 155*)—INSOLVENCY AND RECEIVERS—DISTRIBUTION OF ASSETS—ALLOWANCE OF COUNSEL FEES.
   Where an officer and stockholder of an industrial corporation, who was also a small unsecured creditor, for the benefit of the corporation and its stockholders and not of its creditors, procured the appointment of receivers for the corporation and an order authorizing them to issue receivers' certificates, which were made a first lien on its property, and the proceeds of the property when subsequently sold, after paying necessary charges, were insufficient to pay such receivers' certificates, the court had no authority to pay fees to counsel who acted for complainant, and also, without specific appointment, for the receivers out of such fund.
   [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 316; Dec. Dig. § 155.*]

3. EQUITY (§ 394*)—INSOLVENCY AND RECEIVERS—DISTRIBUTION OF ASSETS—PRIORITY OF CLAIMS—FEES OF MASTER.
   Nor in such case is the fund applicable to payment of the fees of a special master, appointed after the receivers' certificates were issued and sold to hear and determine issues in a contest for the removal of the receivers, but such fees are taxable as costs to the unsuccessful party to such contest.
   [Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 857–859; Dec. Dig. § 394.*]

In Equity.   Suit by George F. Buell against the Kanawha Lumber Corporation.   On applications by Willcox & Willcox, counsel for complainant, and by Joseph A. McCullough, special master, for allowance of fees from fund in court.   Petitions denied.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

F. Barron Grier, of Greenwood, S. C., and E. M. Blythe, of Greenville, S. C., for petitioners.

Iredell Meares and A. G. Ricaud, both of Wilmington, N. C., for intervening petitioners.

SMITH, District Judge. This cause came on to be heard upon the application of Messrs. Willcox & Willcox for fees as counsel for the plaintiff herein and for the receivers, and also upon the application for fees of Joseph A. McCullough, Esq., heretofore appointed special master, and was heard upon these applications, the report of the standing master thereon, the testimony taken on these applications, and generally the record in the cause.

The facts appear to be as follows:

On the 7th day of March, 1908, George F. Buell presented his bill of complaint in this cause to Hon. J. C. Pritchard, United States Circuit Judge, against the Kanawha Lumber Corporation. In that he set out that he was the secretary of the defendant corporation, which owed him the sum of $187.50 on account of unpaid salary, and was also a stockholder in the corporation, being the owner of 100 shares of its capital stock, that the total liabilities of the corporation were about $133,000, and that the value of its assets was about $531,000. The bill stated that the company was involved, and could not get funds to carry on its business, and that the only way in which it could proceed and be saved as a property for the corporation and stockholders would be by the carrying on the business by receivers appointed by this court, who could conduct its business at a profit and prevent its disintegration by being subjected to numerous actions and suits and the claims of creditors under levy and sale, and prayed that the court would appoint receivers to take charge of the assets and property of the corporation and conduct its business. On the same day the defendant, the Kanawha Lumber Corporation, presented its answer, admitting the allegations of the bill, and joining with the complainant in its prayer for relief. The attorneys for the complainant, George F. Buell, were Messrs. Willcox & Willcox, and the attorney for the Kanawha Lumber Corporation was Mr. Henry E. Davis. On presentation of the bill of complaint and the answer the Honorable J. C. Pritchard, United States Circuit Judge, made an order dated the 7th March, 1908, appointing three receivers to take possession of all the assets of the Kanawha Lumber Corporation, with power to carry on and continue its business. The bill and order were filed on March 9, 1908. A few days afterwards, on the 10th March, 1908, Messrs. Willcox & Willcox, signing themselves as attorneys for the receivers, gave notice to Mr. Davis as attorney for the defendant that they would apply to Judge Pritchard at his chambers for an order authorizing the receivers, among other things, to issue receivers' certificates to an amount not exceeding $30,000. It appears that a bill of complaint and answer of the same tenor as those in the Circuit Court for this district had been filed in the District Court of the United States for the Eastern District of Virginia, and that the notice

of application to issue receivers' certificates, together with the petition of the receivers for the purpose of having that issue authorized, was made in the United States Circuit Court for the Eastern District of Virginia, although the assets of the defendant mentioned in the bill were in the district of South Carolina. On the 14th March, 1908,. Judge Pritchard by an order made upon this application in the cause in the Circuit Court of the United States for the Eastern District of Virginia ordered, among other things, that the receivers should issue certificates not to exceed the sum of $30,000, with interest at 6 per cent. per annum, payable quarterly, which should be by their terms a first lien upon all the assets of the Kanawha Lumber Corporation,. except such of its assets as are now subject to lien, and should be by their terms a lien on such assets as are now subject to lien, second only to existing liens.

A certified copy of this order was by direction of the court in the order sent from the Circuit Court of the United States for the Eastern District of Virginia to, and filed in the proceedings in this court on 20th March, 1908. On the 28th July, 1908, the receivers appointed by Judge Pritchard filed a statement in the form of a balance sheet as of March 9, 1908, showing the total assets of the Kanawha Lumber Corporation to be according to the book entries filed by them,. $427,016.57. The receivers, in pursuance of the order authorizing them, issued the certificates up to the full amount of $30,000, and these certificates, with interest according to their terms to an amount aggregating for the same some $35,000, are all still due and unpaid. In September, 1908, certain petitioners, viz., D. C. Boyce, F. M. Boyce, Bettie Boyce, the Murchison National Bank, and the Charleston National Bank, filed an intervening petition in the cause to have the court direct the receivers to stop all operation, and also that the receivers appointed by the court should be removed. This petition was afterwards also joined in by the Bank of Horry, the Burroughs & Collins Company, and the Horry Hardware Company. Another petition was filed on September 19, 1908, on behalf of George F. Buell, the complainant, W. C. Lewis, Laura Lewis, and W. S. Lewis, also asking that the receivers be removed. The receivers filed their answers to the petition, and it was ordered by an order made by Judge Pritchard on September 19, 1908, that all matters and things referred to in the petition and the answer of the receivers and all issues arising thereon be referred to the Honorable Joseph A. McCullough of Greenville, S. C., as special master, to take the testimony and report the evidence with his findings of fact thereon to the United States Circuit Court for this district. The special master took the testimony and made his report, and, the cause coming on to be heard upon the same, Judge Pritchard by an order dated April 21, 1909, allowed the receivers to continue to operate for a limited time, and refused to remove the receivers, but allowed the receiver, J. C. Causey, Jr., to resign, and appointed J. J. Britt in his place, and referred the cause back to the special master to take proof of claim and report. Later, by an order dated July 6, 1909, Judge Pritchard allowed James J. Britt to resign,.

and appointed William H. Chadbourn in his place. The cause having come on to be heard before Judge Pritchard on December 28, 1911, he made a decree wherein he adjudged the certificates issued under the order of the court to be valid obligations of the court, and entitled to be paid by the receivers from the funds in their hands, and next that the claims of the Russell Wheel & Foundry Company and the Climax Manufactory Company were entitled to liens upon the same funds to the extent of their debts, and the receivers were directed to pay them.

By interim orders the sale of all the property had been ordered, which has been made, and it appears that there are now in the hands of the receivers remaining after the payments and disbursements made by them as a total result remaining of all the sales in cash and notes respectively, $38,240.94, representing the entire assets to be administered at this date. This is subject to the payment of whatever may be the incidental and necessary costs of the court, to be paid out of this fund the claim of the Russell Wheel & Foundry Company, amounting to some $3,719, with some four years interest to be added, and the claim of the Climax Manufactory Company, amounting to some $1,050, with four years interest. It is also stated, although the record does not show, that there is some $2,000 still due upon unpaid bills of the receivers. From the fund in court, therefore, there must be first deducted in any event the total of the claims due to the Russell Wheel & Foundry Company, and the Climax Manufactory Company, viz., at least $5,000, leaving applicable to the payment of receivers' certificates the sum of not more than $33,240.94, while the total amount due upon the receivers' certificates with interest to date is stated to be not less than $35,000. So that, in any event, there will not be enough to pay off these certificates, with interest in full.

There is now presented to the court claims on behalf of Messrs. Willcox & Willcox, attorneys, for $7,500, and of the special master, J. A. McCullough, Esq., for compensation of $1,000, making a total of $8,500 to be deducted from this fund, which, if taken from the fund, would leave only applicable to the receivers' certificates the sum of $26,000, irrespective of any other incidental costs of court to be paid out of the same. The question for the court to decide now is whether these applications of Messrs. Willcox & Willcox and Joseph A. McCullough, Esq., should be allowed as payments to be made out of this fund ahead of the certificates.

The issuing of receivers' certificates is the exercising of an extraordinary power by a court of equity, and is done for the purpose of saving and preserving property whose destruction or loss or impairment is threatened. Their issue for purposes of business operations began apparently in the issuance of receivers' certificates for the purposes of public service corporations so as to permit them to perform their duties to the public by continuing their operation; the court holding that the performance of these public duties came before all other demands upon a public service corporation. It was therefore held by the court that in the case of a public service corporation re-

·ceivers' certificates could properly be issued by the court for the purpose of enabling that corporation to go on and perform its functions, as well as preserve its property for the benefit of its stockholders and creditors. The use of receivers' certificates by issuing them for the purposes of industrial corporations has also been allowed. In such cases, however, it has usually been restricted very strictly to the purposes of saving and preserving the property from threatened loss or destruction, and it has been questioned whether they could be issued · to take precedence over existing liens without the consent of the lienholders. The power to issue these certificates and permit loans upon them is a very important and salutary one to courts of equity. By the use of them property can be saved in this way from destruction, and it is exceedingly important that their validity and lien should in no wise be impaired. If it should be understood that in the case of receivers' certificates issued by a court for the extraordinary purposes above mentioned, and purporting to be a first lien upon all the assets and property of the corporation, they are not so, but subject to the payment of subsequently accruing debts for administration or otherwise, their negotiability and value will be much impaired, and the power of the court to use them for most pressing occasions would be much lessened. In the present case the order directing the issue of these certificates expressly directed and ordered that they should be a first lien upon all the assets of the corporation, assets at that time which by the allegations of the complaint and the statements of the receivers appeared to aggregate over $400,000. A case is now presented before the court where upon the actual net results realized from these assets applicable thereto they are insufficient to pay these certificates, whether the fund for the payment of the certificates shall be still further reduced by the payment in priority to them of the claims now before the court.

1. *As to the claim of Messrs. Willcox & Willcox.*

It appears from the testimony that the bill of complaint was filed for the purpose, not of enforcing claims against the corporation, but for the benefit of the corporation, by enabling receivers, if appointed for its benefit, to obtain money through the machinery of the court whereby to keep the corporation a going concern. The whole proceedings were initiated with the knowledge and consent of the officers of the corporation, and, in fact, by its officers and other stockholders for the benefit of the corporation. The testimony shows that the complainant, Buell, was the secretary of the corporation, that he was a creditor for a very inconsiderable amount for unpaid salary, and that in filing this bill initiating these proceedings he was acting really under the authority and by the instruction of the corporation so as to obtain the appointment of receivers to hold the property and carry on the concern. By the appointment of these receivers the corporation and its stockholders obtained the position of having the corporation kept as a going concern out of the reach of creditors who might be inclined to enforce their debts at law, and thus enabled to use its assets to raise funds having precedence in payment over other

claims, for the purpose of its operation, by an order of court allow-
ing receivers' certificates to be issued as a first lien upon its assets.
It was not the case of a bill filed bona fide by a creditor to enforce
claims, or by a stockholder to enforce his rights against contesting
stockholders, but a bill filed in reality by the defendant corporation
itself through the procured agency of its secretary for the purpose
of enabling the corporation to fence off the claims of creditors, and
to borrow money as a first lien on its assets to carry on its operations
for the benefit of its stockholders. Messrs. Willcox & Willcox were
the attorneys for the complainant, and the attorney for the defend-
ant was Mr. H. E. Davis, a young man who was at that time em-
ployed in the office of Willcox & Willcox, and the terms of the answer
show that he represented no really antagonistic interest. The notice
to him, therefore, of the proposed application for an order for the
issue of receivers' certificates, was in reality no service of a notice
upon any substantially antagonistic interest. Messrs. Willcox & Will-
cox, thus having obtained the receivers and filed the bill as solicitors
for the complainant, were presumably aware of all the circumstances
of the case when they made the application for the issue of these cer-
tificates, and obtained the order for the issue, in which order they were
advised that these certificates when authorized to be issued were to
be a first lien on all the assets of the corporation. They subsequently
acted as counsel for the receivers, but there is no order taking them
away from their position as solicitors for the complainant. Subse-
quently the complainant joined in a petition to have these receivers
who had been appointed on the motion of his own attorneys, or the
attorneys who were acting for him, removed, which placed him in
an antagonistic position to the receivers and to Messrs. Willcox &
Willcox, who were acting as counsel for the receivers, but, so far
as the record shows, there is no order relieving Messrs. Willcox &
Willcox from their position as complainants' counsel, nor any order
appointing them as receivers' counsel, and the inference to be drawn
from their action on behalf of the receivers in carrying out the plan
agreed upon when these proceedings were instituted would be that
they were still continuing to act for the interests they represented at
the time of the institution of these proceedings. They did represent
the receivers in the apparently very hot and contested controversy
which arose upon the attempt of the intervening petitioners, including
the complainant himself, to remove the receivers from their position,
and they did also represent the receivers in a number of incidental
matters that came up during the operation of the receivership.

The court has gone carefully over the question and the circum-
stances of the cases in which the allowance of fees to counsel is made
in equity causes, and has consulted the following cases among others:
Lynch v. De Bernal, 9 Wall. 315, 19 L. Ed. 714; Hauenstein v. Lyn-
ham, 100 U. S. 483, 25 L. Ed. 628; Trustees v. Greenough, 105 U.
S. 527, 26 L. Ed. 1157; Central R. R. v. Pettus, 113 U. S. 116, 5
Sup. Ct. 387, 28 L. Ed. 915; Hobbs v. McLean, 117 U. S. 567, 6
Sup. Ct. 870, 29 L. Ed. 940; Thompson v. Phenix Ins. Co., 136

U. S. 287, 10 Sup. Ct. 1019, 34 L. Ed. 408; Fowler v. Equitable Trust Co., 141 U. S. 411, 12 Sup. Ct. 8, 35 L. Ed. 794; Harrison v. Perea, 168 U. S. 311, 18 Sup. Ct. 129, 42 L. Ed. 478; Randolph v. Scruggs, 190 U. S. 533, 23 Sup. Ct. 710, 47 L. Ed. 1165; Hand v. Railroad, 21 S. C. 162; Hubbard v. Camperdown Mills, 25 S. C. 496, 1 S. E. 5; Lawton v. Perry, 45 S. C. 319, 23 S. E. 53; Central Trust Co. v. Wabash, St. L. & P..Ry. Co. (C. C.) 23 Fed. 675; Adams v. Kehlor Milling Co. (C. C.) 38 Fed. 281; Claflin v. Bennett (C. C.) 51 Fed. 693; Blair v. Harrison, 57 Fed. 257, 6 C. C. A. 326; Farmers' Trust Co. v. Green, 79 Fed. 222, 24 C., C. A. 506; U. S. v. Boyd (C. C.) 79 Fed. 858; Burden Co. v. Ferris Co., 87 Fed. 810, 31 C. C. A. 233; In re Scholtz (D. C.) 106 Fed. 834; Glidden v. Cowen, 123 Fed. 148, 59 C. C. A. 172; Lamar v. Hall & Wimberly, 129 Fed. 79, 63 C. C. A. 521; Firth Co. v. Millen Cotton Mills (C. C.) 129 Fed. 141; Page v. Rogers, 149 Fed. 194, 79 C. C. A. 153; Re Waterloo Organ Co., 154 Fed. 657, 83 C. C. A. 481; Gilmore v. McBride, 156 Fed. 464, 84 C. C. A. 274; Re Williams' Estate, 156 Fed. 934, 84 C. C. A. 434; McIntosh v. Ward, 159 Fed. 66, 86 C. C. A. 256; Re Franklin (D. C.) 151 Fed. 642; Haight & Frees Co: v. Weiss, 165 Fed. 430, 91 C. C. A. 380; Miers v. Columbia Mut. Bldg. Ass'n (C. C.) 166 Fed. 781; Jefferson Hotel Co. v. Brumbaugh, 168 Fed. 867, 94 C. C. A. 279; Dunlap Hardware Co. v. Huddleston, 167 Fed. 433, 93 C. C. A. 69; Edwards v. Bay State Gas Co. (C. C.) 172 Fed. 971; Doddridge County Oil & Gas Co. v. Smith (C. C.) 173 Fed. 386; Pusey & Jones v. Penn Paper Mills (C. C.) 173 Fed. 629; In re Allert (D. C.) 173 Fed. 691; In re E. I. Fidler & Son (D. C.) 172 Fed. 632; Bowker v: Haight Co., 170 Fed. 67, 95 C. C. A. 343; Gillespie v. Piles Co., 178 Fed. 886, 102 C. C. A. 120; Bray v. Staples, 180 Fed. 321, 103 C. C. A. 451; Ely v. Van Kannel Revolving Door Co. (C. C.) 184 Fed. 459; Guaranty Trust Co. v. Chicago, 185 Fed. 411, 109 C. C. A. 18; In re Gillaspie (D. C.) 190 Fed. 88; In re Freeman (D. C.) 190 Fed. 48; Buckwalter v. Whipple, 115 Ga. 484, 41 S. E. 1010.

The custom of allowing compensation to solicitors out of a fund in court originated as it appears in England in courts of equity, where costs as between solicitor and client would be allowed out of the fund to the solicitors of the complainant in the proceeding upon the theory that where one litigant had proceeded, and at his own expense had either created or preserved or protected a fund, and others were entitled to claim and did claim in the results of his labors, it was not fair that the person who had taken the risk and cost and expenses of litigation should bear all the costs, but that those who shared in the fruits of it should bear their fair pro rata share. This rule was eminently fair and proper. It simply went to the extent that, where meritorious results were actually achieved, that those who lay by in inaction should not be allowed to await the result, escape all expenses if the case be lost, but, if successful, share the actual benefits by receiving their portion of this success, without contributing their share of the expenses. As it would have been futile and unnecessary to subject the successful plaintiff to a suit at law against each that

availed himself of the result, the court of equity, having the fund in its hands, did equity by allowing to the complainant who took all the risk of loss in this way to recover his costs as between solicitor and client out of the fund before the payment of the pro rata shares to those who shared with him in the.success of his labors. In England this seems to have been confined to the costs as between solicitor and client, and not to have been extended to the fees of counsel; that is, fees of the barristers.

[1] In America no distinction as between solicitors and barristers existing, the doctrine has been extended so as to include all the fees and expenses reasonably due by the successful litigant to his counsel, and the rule is established that where one goes into a court of equity, and takes the risk of litigation on himself, and successfully creates or preserves or protects a fund to a share in which others are entitled, those others will not be allowed to lie back and share the results of these successful labors without contributing their due share, and a court of equity by an equitable extension of the English principle has required the payment out of the fund (before distribution) of the reasonable costs and expenses, including the reasonable counsel fees of the complainant whose diligence created or preserved the fund for distribution. If the complainant had been unsuccessful, and no fund had been created, he would have had to undergo the fate of the unsuccessful litigant in any other proceeding; that is, to pay the costs and expenses himself. That is the burden and risk that every litigant takes when he enters a court of justice. If unsuccessful, he must pay the costs of the court and also his own counsel fees. No man will be compelled to pay that which he did not expressly or impliedly contract under such circumstances to pay, and, if the complainant be unsuccessful, he cannot call upon others who did not believe in the merit of the claim, or did not care to undertake the risk of litigation, to pay any part of these expenses. He must bear them all himself. So, in any court of equity in the United States, where the complainant fails in his.application, he has to pay all the costs of court, including the fees of the officers of the court, and of the masters and examiners as well as his own counsel fees. If successful, and through his efforts a fund has been created and protected or preserved, the court will under the principle of requiring equity to be done by those who share in these results require payment of all proper expenses out of the fund, if any fund there be within the court applicable to them. But it must be a fund applicable to the claims of the complainant and those interested with him, as, for instance, if the complainant filed a bill to liquidate and marshal the assets of a corporation and he be a general creditor, he has no right to subject to the payment of his costs and expenses and counsel fees any funds arising from the proceeds of the sale of property upon which there were mortgages or other liens, save and except in proper cases such portion of those expenses as in the court's opinion the mortgagees would have been put to had they themselves foreclosed and liquidated the specific property subject to their liens.

201 F.—49

[2] In the present case, if the Kanawha Lumber Corporation had had mortgages upon any of its property and a stockholder had chosen to file a bill similar to the one at present before the court, he took the risk of paying all the expenses entailed by the filing of that bill. Inasmuch as he filed it to protect his own equities, so to say, he could not call upon the mortgagees to pay any part of these expenses, for it would not be the mortgagees who came into court, but the person who was postponed to them who brought them there. To allow a simple contract creditor or stockholder to have the assets of a corporation upon which there are mortgages or other liens placed in court for the purposes of advancing or protecting his own interests, and then sell the property and subject the proceeds of the sale of the mortgaged property to the payment of his costs and counsel fees incurred at his instance, and not for the benefit of the mortgagees, would be to subject the mortgagees to an injustice which a court of equity will not countenance. In the present case we have a bill filed by a small unsecured creditor and stockholder for the benefit of the corporation. At his solicitation, through the receivers procured by him, he has an order made by the court for the borrowing of money upon the faith of what is declared to be a first mortgage of the highest possible character, viz., upon receivers' certificates, which by order of the court are declared to be a first lien upon all the assets in the receivers' hands. It is patent; therefore, that he under no circumstances would be entitled to have his costs and fees and expenses paid out of this property which at his instance is pledged for the payment of an innocent third party, to wit, the bank or other party who might lend money upon these certificates upon the faith of the court's assurance made on his motion as to their being a first lien. So much, therefore, of the application of Messrs. Willcox & Willcox as is based upon their having acted as counsel for the complainant is necessarily not entitled to any payment out of this fund, or in fact out of any fund in court, as there does not appear to have been any fund created or preserved in this cause through the litigation instituted by their client in which he or any other party who has availed himself of his bill of complaint is entitled to share.

Next, as to the compensation for the services claimed by them to have been performed for the receivers appointed under the order of court. In this case, it would not appear that they were in any different position essentially than that of any lawyer who acts as counsel for a man whose property is mortgaged. A man owning real estate and who has all his property mortgaged cannot give the attorneys acting for him a lien upon the proceeds of that real estate ahead of the mortgagee. The expenses of receivers, including their counsel fees, are presumed in the first instance to be paid out of the income from property in their hands. This is more especially so where they are allowed to operate the property, and carry on the business as in the present case. They will be allowed to be paid out of the principal in special cases where the services of the receiver, including those of his counsel, were procured by, or actually protected or preserved the property for, the lienholders. But, where a receiver is procured by

a stockholder or creditor for the purpose of protecting an interest or equity in property over existing liens, the court will not ordinarily permit the cost of this receivership to be charged against the fund applicable to prior liens. Where the fund applicable to the expenses of the receivership proves insufficient, the court may in the exercise of its equity powers compel the party who procured the receiver to be appointed to pay the expenses of the receivership. McIntosh v. Ward, 159 Fed. 66, 86 C. C. A. 256. In this case it does not appear from the record that Messrs. Willcox & Willcox have ever distinctly ceased acting in this litigation for the benefit of the corporation. The bill was filed by them for the benefit of the corporation, and the receivers were appointed for the benefit of the corporation and its stockholders, and the services to the receivers were for the benefit of the corporation or its stockholders, and not for the benefit of the first lienholders, to wit, the holders of receivers' certificates. They were not specifically appointed counsel for the receivers; and, while receivers like any other trustees have the right to employ counsel and to pay counsel out of the trust assets, yet in this case there is no trust asset applicable to the payment of their claims, or to the compensation of the receivers themselves. The only trust asset that would have existed in this matter would have been any funds over and above the amount necessary to pay the debts which the court had pledged all these assets to pay. If any such fund was before the court the claims of receivers or receivers' counsel might be entertained; but in the present case it does not appear to be a case in which as such they are entitled to any claim out of this fund. The party to whom they may be entitled to look is the complainant, who employed them to bring these proceedings. Inasmuch as the result of the proceedings instituted by him is such as to leave unpaid the costs of court and other expenses properly to be paid, the complainant and those who acted with him should be responsible for all services they procured to be performed, and the fees of counsel for the receivers in this case may stand in that category. It does not appear, however, that Messrs. Willcox & Willcox are entitled to be paid out of the fund now in the court, and it will be so decreed, but without any prejudice to any right they may have to a proceeding in this cause to which the complainant is directly a party to recover their fees for services to the receivers to be paid as part of the costs and expenses of the case by the complainant, or to an action at law against the complainant or others associated with him to recover the full amount due for their services as counsel for complainant. Inasmuch as there is no fund out of which the court can pay these services, it will not be necessary for the court now to pass upon their value as to whether their claim is in amount well founded or not.

The complainant having come into this court and sought its relief is liable to all such costs and expenses as such complainant is by law required to pay.

Upon a proper petition or application to that effect, with which the complainant is duly served according to the practice of this court in such intervening applications, the court will be in a position to determine whether the complainant should not be decreed to pay the reasonable value of the services of Messrs. Willcox & Willcox to the re-

ceivers to be taxed against the complainant as part of the costs, expenses, and disbursements of the cause to be paid by him. But Messrs. Willcox & Willcox may also, if they see fit, institute proceedings at law against the complainant and any others for whom they acted to recover such compensation as such parties may have impliedly or expressly contracted to pay to them as complainant's solicitors.

[3] 2. *As to the claim of Joseph A. McCullough, Esq., special master.*

This claim stands upon a very different basis from the other, inasmuch as the special master is presumed to act under the appointment of the court and for the benefit of the court in assisting it in forwarding the cause and arriving at a decree. The special master in this case was appointed after these receivers' certificates had been authorized to be issued, pledging all the assets for their payment. He was appointed by the court originally to assist it under the issues in an intervening petition brought by D. C. Boyce and others. He was not appointed at the instance or for the benefit in any way of the holders of these receivers' certificates. The fact is he was appointed in a manner wholly independent of the rights of the innocent holders of these certificates. He was appointed by reason of the proceedings instituted by certain stockholders of the corporation to have the receivers who had been appointed at the instance and the solicitation of the complainant removed from office. The principal service of the special master was to take the testimony and report upon the issues involved in this application under the contest made by the receivers not to be removed. Under these circumstances, he stands in the same position as any other officer of the court entitled to fees as costs in a cause. The officers of the court are entitled to require the prepayment of costs and compensation before they perform their services. If they do not require payment in advance, they are entitled to have their legal costs taxed and enter up judgment against the party responsible, or, if there is a fund in court applicable to the payment thereof, to have the court pay them direct out of the fund applicable. It does not appear to the court that there is any fund in the court applicable to the payment of the fees of Mr. McCullough as special master in this case. The fund in court is by the decrees made in this court pledged to the payment of, first, the claims of the Climax Manufactory Company and the Russell Wheel & Foundry Company, and, next, of the holders of the receivers' certificates. From this fund can be deducted only such fees and compensation to officers of the court as are proper to be deducted as arising out of some matter germane to or affecting the issuance and liquidation and settlement of these claims and certificates as procured by the holders or by which they have been protected or benefited. The compensation of Mr. McCullough would not appear to fall within any of these categories. His services were procured for purposes with which the holders of these certificates had nothing to do. His services were performed. The question then is, Who is responsible for his compensation? Under ordinary circumstances, the complainant is responsible for such fees and costs as are incurred through matters arising out of the litigation initiated by him. But the issues under which Mr. McCullough was appointed were

no part of the original bill, but arose upon the petition filed by the intervening petitioners to remove the receivers. These intervening petitioners would thus appear to have been the actors in a special proceeding under which the services of Mr. McCullough were procured to be performed, and, having lost their cause, should now as the losers pay the costs. The practice of this court heretofore has been to allow special masters the compensation that would be allowed to a standing master, plus an additional amount due in extraordinary cases for extraordinary services performed, and for the reason that the special master is one who performed the service not as part of his usual vocation. Upon inspecting the record, the court is of opinion that a proper compensation to Mr. McCullough for the services performed by him will be $600, to which shall be added his cash disbursements, amounting to $44.76, and it will be so decreed in the formal decree to be entered on the conclusions of law and fact hereinbefore found